**Paul SCHAEFER and Irene Tader, Plaintiffs–Appellants,**

v.

**CITY & COUNTY OF DENVER, a municipal corporation, Defendant–Appellee.**

No. 97CA1481.

Colorado Court of Appeals, Div. IV.

Oct. 15, 1998.

Rehearing Denied Nov. 13, 1998.

Certiorari Denied April 12, 1999.

James P. Rouse, Denver, for Plaintiffs–Appellants.

Daniel E. Muse, City Attorney, Stan M. Sharoff, Assistant City Attorney, Denver, for Defendant–Appellee.

Opinion by Judge ROY.

In this declaratory judgment action seeking injunctive relief, the plaintiffs, who are taxpayers in the City and County of Denver (the taxpayers), appeal from a summary judgment entered in favor of the defendant, the City and County of Denver (the City). The only issue on review is whether the City exceeded its authority by enacting Ordinance No. 816, Series 1996 (ordinance), extending health and dental benefits to employees having a committed relationship with persons of the same gender. We affirm.

The ordinance grants health and dental insurance benefits to the "spousal equivalent" of city employees. A "spousal equivalent" is defined as:

an adult of the same gender with whom the employee is in an exclusive committed relationship, who is not related to the employee and who shares basic living expenses with the intent for the relationship to last indefinitely.

Our review of an order granting summary judgment is *de novo*. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

The taxpayers' challenge to the summary judgment is premised solely on their assertion that the subject matter addressed by the ordinance is a matter of statewide concern and that the state has preempted the subject by the adoption of statutes which conflict with the ordinance. We are not persuaded.

The City is a home rule city with "the full right of self-government in both local and municipal matters." Colo. Const. art. XX, §6. It has "every power possessed by the General Assembly as to local and municipal matters, unless restricted by the terms of the city's charter." *Veterans of Foreign Wars, Post 4264 v. City of Steamboat Springs,* 195 Colo. 44, 50, 575 P.2d 835, 840 (1978); *see also Colorado Open Space Council, Inc. v. City & County of Denver,* 190 Colo. 122, 543 P.2d 1258 (1975).

■■■ An ordinance of a home rule city supersedes a conflicting state statute if the subject matter is of purely local concern. *Conrad v. City of Thornton,* 191 Colo. 444, 553 P.2d 822 (1976). In matters of mixed state and local concern, a home rule city's ordinance may coexist with a state statute provided there is no conflict. In the event of a conflict, the state statute supersedes the conflicting provisions of the ordinance. *See City & County of Denver v. State,* 788 P.2d 764 (Colo.1990).

■■■ In matters of statewide concern, however, the state may legislate and home rule cities have no such power without specific authority granted by the constitution or statute. *See City & County of Denver v. State, supra.*

Our supreme court has recognized that the authority to define the scope of employee compensation, including benefits, is of particular importance to a local government because of its impact on a city's ability "to both hire and retain qualified individuals." *Colorado Springs Fire Fighters Ass'n v. Colorado Springs,* 784 P.2d 766, 773 (Colo.1989). As such, the court recognized that a city's payment of health care premiums for its employees "is a matter of local concern which has not been addressed by state statutory provisions, and is therefore subject to the limitations imposed by the city charter." *Colorado Springs Fire Fighters Ass'n v. Colorado Springs, supra* (fn.18).

■■■ The taxpayers argue that the state legislated in the area of employee insurance benefits by the adoption of §10–7–203, C.R.S. 1998, its regulation of the insurance industry (Colorado Insurance Code), and its laws relating to the preservation of families (Uniform Marriage Act). We disagree.

## I. Section 10–7–203, C.R.S.1998

Section 10–7–203, C.R.S.1998, provides as follows:

*Section 10–7–203  Employer defined*

The term 'employer' as used in sections 10–7–201 and 10–7–202 includes counties, cities, cities and counties, incorporated towns, school districts, and other political subdivisions of this state; and such subdivisions, in order to promote the better efficiency of its employees, may insure its employees, or any class thereof, under a policy of group insurance covering life, health, or accident insurance for such employees and may pay, or authorize to be paid, out of the corporate revenue of such political subdivisions the premiums required from time to time to maintain such group insurance in force; and, if such employees are required to contribute to the cost of their insurance, deductions for this purpose may be made from their salaries.

Upon examining the plain language of the statute, we observe that §10–7–203 is a definitional section with very limited application. Section 10–7–203 defines the word "employ-

er" for the purposes of only two sections of the statute, §§10–7–201 and 10–7–202, C.R.S. 1998. The statutory article of which §§10–7–201 and 10–7–202 are a part regulates group life insurance policies, not group health insurance policies. These sections specify provisions which must be contained in any group life insurance policy issued in the state.

The term "employer" appears twice in §10–7–201 and does not appear in §10–7–202. Section §10–7–201, in pertinent part, provides:

(1) No policy of group life insurance shall be delivered in this state unless:

(a) The policyholder was formed for purposes other than obtaining insurance, or is a trust established by one or more employers or by one or more labor unions, or by one or more employers and one or more labor unions . . .

We do not read §10–7–203 as limiting, or intending to limit, the power of a home rule city to design and implement group health insurance programs for its employees.

■ The statute does contain granting language and both parties seem to agree that this statute authorizes the purchase of group insurance with public revenues by political subdivisions of the state. While other entities listed in the statute may require statutory authority to offer group insurance as an employee benefit, home rule cities derive that power from Article XX, Section 6 of the Constitution which, after enumerating certain powers granted home rule cities, provides:

It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.

We conclude that home rule cities in Colorado need not rely on §10–7–203 for authority to purchase and offer group health insurance policies as an employee benefit. *See*

*Colorado Springs Fire Fighters v. Colorado Springs, supra.*

In urging us to reach a contrary conclusion, the taxpayers place considerable reliance on *Lilly v. City of Minneapolis,* 527 N.W.2d 107 (Minn.App.1995). In *Lilly,* the appellate court held that Minneapolis, a home rule city, did not have authority to extend benefits to unmarried domestic partners which included both heterosexual and homosexual relationships. In Minnesota, however, there is no broad grant of legislative power to home rule cities in the state constitution. Therefore, a grant of power to cities in Minnesota is, according to *Lilly,* to be read narrowly and a legislative grant of authority to provide benefits to spouses and dependents does not include others.

In addition, the Minnesota court held that the problem of discrimination was a matter of statewide concern and, therefore, a home rule city's power to combat discrimination must be narrowly construed. Therefore, an amendment to the Minnesota Human Rights Act adding a prohibition against discrimination based on sexual orientation but which also stated that the act was not to be construed to condone the homosexual lifestyle or authorize the recognition of same-sex marriages indicated a legislative intent not to extend to same sex domestic partners employee benefits available to married employees.

It is apparent that there are significant differences between Minnesota and Colorado with regard to the constitutional, statutory, and judicial approaches to the concept of home rule cities in general, and the legislative powers of home rule cities in particular, that render *Lilly v. City of Minneapolis, supra,* distinguishable and unpersuasive. For much the same reason, we find the analysis in *City of Atlanta v. McKinney,* 265 Ga. 161, 454 S.E.2d 517 (1995) singularly unpersuasive.

## II. Colorado Insurance Code

■ The taxpayers next argue that various provisions of the statues regulating the insurance industry, §10–1–101, C.R.S.1998, et seq., limit the authority of the City to provide

group insurance benefits to "spousal equivalents." We disagree.

The taxpayers' argument is premised, to a considerable extent, on the use of the word "dependent" in various sections of the statutes regulating the insurance industry and the limitation of that term to spouses and children. *See* §10–16–102(14), C.R.S.1998 (defining "dependent" for the purposes of the Colorado Health Care Coverage Act).

The scope of Title 10 relates to the regulation of the insurance industry, not municipalities or other consumers of insurance. *See* §10–1–101, C.R.S.1998. As a general matter, when the word "dependent" is used in this title, it is in an expansive sense, that is, insurance benefits may, or must, be extended to dependents of the insured. In addition, these statutes impose minimum requirements on insurance carriers with regard to insurance policies issued in Colorado; they do not restrict the insurance carriers from offering additional or broader coverages.

We are not aware of any statute or other legal authority that either limits the benefits that may be made available to an insured and his or her dependents or that prohibits benefits from being extended to others.

### III. Family and Marriage

Lastly, the taxpayers assert that what constitutes a "family" and "marriage" preempts the power of the City to grant health and dental insurance coverages to spousal equivalents. We do not agree.

 The crux of the taxpayers' argument is that the extension of health insurance benefits to spousal equivalents conflicts with the traditional definition of "family" and, therefore, has an impact upon the requirements for marriage set forth in the Uniform Marriage Act, §14–2–101, et seq., C.R.S.1998. However, while we agree that the Uniform Marriage Act reflects a legislative intent to strengthen and preserve the integrity of marriage and the safeguarding of meaningful family relationships, *see* §14–2–102, C.R.S. 1998, and that is a matter of legitimate statewide concern, we do not agree that the ordinance infringes on that purpose.

The ordinance qualifies a separate and distinct group of people who are not eligible to contract a state-sanctioned marriage to receive health and dental insurance benefits from the City. Therefore, the ordinance does not adversely impact the integrity and importance of the institution of marriage.

We conclude that the state has not asserted any general or particularized interest in the compensation or group health and dental benefits provided to employees of municipalities in general, and home rule cities in particular. We, therefore, conclude, consistent with *Colorado Springs Fire Fighters v. Colorado Springs, supra,* that the power to grant group health insurance benefits to spousal equivalents is a matter of local concern subject only to the limitations imposed by the city charter.

Judgment affirmed.

Judge NEY and Judge KAPELKE concur.