OPINION OF THE COURT
Louis B. York, J.
In this action, plaintiffs, who are New York City property holders and taxpayers, challenge the validity of Local Laws, 1998, No. 27 of the City of New York, commonly known as the “Domestic Partners Law”, and Mayoral Executive Order Nos. 48 and 49, which the Local Law codifies. The statute went into effect on Saturday, September 5, 1998. Plaintiffs’ challenge has several bases. First, they allege that defendants the City of New York and Mayor Rudolph Giuliani have acted illegally by legislating in the area of marriage and domestic relations— which, by statute, is under the exclusive jurisdiction of the New York State Legislature. Second, they allege that the challenged laws effectively recognize common-law marriages, which are illegal as contrary to public policy pursuant to Laws of 1933 (ch 606). (See, Matter of Gotlib v Ratsutsky, 195 AD2d 432 [1st Dept 1993], affd 83 NY2d 696 [1994].) Third, according to plaintiffs, in extending health and retirement benefits to the domestic partners of City employees, defendants are exceeding their statutory and constitutional authority. Fourth, plaintiffs argue that defendants have attempted to give domestic partnership a marital status despite the absence of statutory or constitutional authority.
Ultimately, plaintiffs seek a declaration from this court that the Local Law and the Executive Orders are null and void; and, they ask this court to permanently enjoin defendants from implementing them. Initially, however, plaintiffs brought a motion for a preliminary injunction pending the final resolution of the lawsuit. Defendants responded by cross-moving to dismiss in lieu of serving an answer to the complaint.
At the outset, the court rejects plaintiffs’ contention that defendants have submitted evidence or asserted arguments that are inappropriate on a motion to dismiss. For defendants to prevail on their cross motion, they must show that plaintiffs *743 have failed to state a cause of action. (Williams v New York City Hous. Auth., 238 AD2d 413, 414 [2d Dept 1997].) In considering the cross motion, the court can consider evidentiary materials for the purpose of assessing the viability of the complaint. (Supra; see, Adams v O’Connor, 245 AD2d 537 [2d Dept 1997].) “ ‘[T]he criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one’ ”. (Doria v Masucci, 230 AD2d 764, 765 [2d Dept 1996], Iv denied 89 NY2d 811 [1997].) Here, the statute at issue is proper — and, indeed, necessary, for consideration. Plaintiffs have failed to detail any other respects in which defendants’ arguments are improper.
Thus, the court turns to consideration of the issues before it. And, after careful consideration, the court finds that in enacting the Local Law, the City did not impermissibly legislate in the area of marriage and properly utilized its legislative powers. Accordingly, the court denies the motion for a preliminary injunction and grants the cross motion to dismiss.
HOME RULE LAW
Plaintiffs assert that the Executive Orders and ordinance at issue must fall under the Municipal Home Rule Law. In this State, local governments have broad police powers relating to the welfare of their citizens. However, they cannot exercise their powers by adopting laws inconsistent with either constitutional or general State law. (Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 107 [1983].) In addition, local governments may be restrained by State legislation that preempts areas of regulation. (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987], affd 487 US 1 [1988].)
I. Creating a Common Law Marriage
“There can be little doubt that the public policy of this State has been to withhold recognition of common-law marriage, and it is unassailable that in its broad powers to regúlate society, the State has the power to set standards and procedures to control such a basic institution as marriage.” (People v Allen, 27 NY2d 108, 113 [1970].) Common-law marriage has been unconstitutional since 1933; and, the law is still in effect today. (See, Raum v Restaurant Assocs., 252 AD2d 369, 375 [Rosenberger, J., dissenting] [1st Dept 1998], appeal dismissed 92 NY2d 946 [1998]; see also, Storrs v Holcomb, 168 Misc 2d 898 [Sup Ct, Tompkins County 1996] [denying CPLR article 78 *744 challenge to City Clerk’s refusal to issue marriage license to same sex couple].) Plaintiffs’ first, second and fourth causes of action all center around the premise that in enacting the Executive Orders and the Domestic Partners Law, defendants have improperly attempted to legalize common-law marriage.
Initially, the court notes that the portion of the law relating to succession and occupancy rights (see, infra, at 744-745), simply reiterates State law as expressed in Braschi v Stahl Assocs. Co. (74 NY2d 201 [1989]), and the relevant State regulations. (E.g., 9 NYCRR 1727-8.2, 2104.6, 2204.6.) Thus, to the extent that the ordinance gives succession and occupancy rights to domestic partners, it is not only consistent with, but patterned after, State law.
Next, the court examines the ordinance as a whole and assesses the merits of the first of plaintiffs’ arguments. If, in fact, a domestic partnership is identical to a marriage, the challenged legislation would be impermissible under home rule law principles. However, a review of the challenged Domestic Partners Law and of the Domestic Relations Law, which regulates marriage in New York State, shows that a domestic partnership is different from a marriage in many respects.
Under Local Law 27, two people can register with the City clerk as domestic partners if:
(1) both individuals are New York City residents, or at least one is employed by the City;
(2) both are at least 18 years old;
(3) neither one is married;
(4) neither one is involved in another domestic partnership;
(5) neither one has been involved in another domestic partnership within the six months immediately prior to the date of registration;
(6) the proposed partners are not related by blood in a manner that would prevent them from marrying in New York; and
(7) the proposed partners share a close, committed personal relationship; they live together; and they have been living together on a continuous basis.
To register as domestic partners, the pair simply must execute an affidavit of domestic partnership which declares them to be domestic partners and which further declares that they satisfy all of the above criteria. Upon registration, “to the extent not inconsistent with law, the city shall make benefits available to the domestic partners of city employees on the same basis as the city makes benefits available to the spouses of city employ *745 ees.” (Local Laws, 1998, No. 27 of City of New York § 16, adding Administrative Code of City of NY § 12-307 [c].) Among other things,
(1) City employees are entitled to bereavement and child care leaves of absence;
(2) City employees are entitled to health and retirement benefits;
(3) domestic partners acquire visitation rights in City correctional and juvenile detention facilities, and in facilities operated by the New York City Health and Hospitals Corporation; and
(4) domestic partners who are (a) tenants in buildings operated by the New York City Housing Authority or (b) tenants and cooperative residents in buildings under the jurisdiction of the Department of Housing Preservation and Development become eligible to qualify as family members for the purpose of succession or occupancy rights.
In addition, pursuant to subsequently applicable laws, domestic partners may become entitled to other rights and benefits.
Domestic partnerships terminate automatically upon the marriage of one or both of the parties. Alternatively, one or both of the partners can file a termination statement with the city clerk. If only one of the partners has signed the statement, he or she must notify the other partner of the termination by registered mail, return receipt requested. No grounds for the termination must be specified and no further procedures are required to effectuate the termination.
The formal requirements regulating marriages, on the other hand, are far more stringent than those regulating domestic partnerships. Unlike a domestic partnership, a marriage is not effectuated by the mere filing of an affidavit. Instead, to be valid a marriage must be solemnized by an authorized religious leader or an authorized leader of the Society for Ethical Culture; the Mayor, city clerk or other authorized local official; a New York State or a Federal Judge, or an authorized judicial officer. (Domestic Relations Law § 11.) Furthermore, although no particular form of ceremony is required, the parties must solemnly deplare in the presence of the officiator that “they take each other as husband and wife.” (Domestic Relations Law § 12.)
Second, several prerequisites must be satisfied before a couple can be joined in marriage. Before solemnizing their marriage the parties must apply with the town or city clerk for *746 a marriage license. (Domestic Relations Law § 13.) When two individuals apply for a license, the clerk requires each one to sign and verify a statement or affidavit including: his or her full name, place of residence, age, occupation, place of birth, name of father, the father’s country of birth, maiden name of mother, the mother’s country of birth, the number of the marriage (is this each individual’s first marriage, second marriage, etc.). (Domestic Relations Law § 15.) This information is far more detailed than that which must be given by domestic partners. The clerk is empowered to make “any material inquiry pertaining to the issuing of the license”. (Domestic Relations Law § 15 [1] [a].) •
Third, there are various health and blood testing requirements at the time the parties obtain the license. (See, Domestic Relations Law §§ 13-aa, 13-d.) On the other hand, there is no need to satisfy these requirements to obtain the status of domestic partners.
Fourth, the form of the marriage license is set forth at Domestic Relations Law § 14; it is far more detailed than the domestic partners certificate. Upon receipt of the completed, notarized license, the town or city clerk issues to the parties a certificate of marriage registration. (Domestic Relations Law § 14-a.) The parties must wait at least 24 hours and at most 60 days between the issuance of the license and the solemnization of the marriage. (Domestic Relations Law § 13-b.) There is no waiting period required of domestic partners. The town or city clerk records and indexes information pertaining to the marriage license (Domestic Relations Law § 19 [1]), or else preserves the information according to one of the alternative methods described in Domestic Relations Law § 19 (2) (a). The State Department of Health also keeps information relating to the marriage. (Domestic Relations Law § 20.)
Fifth, the marital relationship not only has more stringent requirements prior to formalization; in addition, once people have entered into marital relationships, they acquire certain rights and responsibilities with respect to their spouses. Like domestic partners, New York City employees obtain the right to insurance benefits, sick leave, maternity/paternity leave and other privileges; and, regardless of their place of employment, both spouses and domestic partners gain hospital and prison visitation rights. However, the children of parents who have been or are married are deemed the legitimate offspring of both parents, even if the marriage occurs after the birth of the children; and, the parents are obligated to support them. *747 (Domestic Relations Law § 33.) The children of domestic partners, on the other hand, do not receive the stamp of legitimacy upon the filing of the certificate.
Sixth, individuals receive financial rights relating to their spouse’s properties. Marriage is viewed as an economic partnership; and, therefore, property acquired during the course of the marriage is considered marital property. (See, Dolan v Dolan, 78 NY2d 463, 466 [1991].) Pension benefits earned during the marriage are also considered as marital property. (Majauskas v Majauskas, 61 NY2d 481 [1984].) In addition, as defendants point out, only spouses are eligible for pension and welfare benefits and for financial aid under the Education Law. The Domestic Partners Law makes no attempt to extend these rights to unmarried couples.
The marital partner’s rights relating to the estate of his or her deceased spouse are unavailable to a domestic partner. For example, if one spouse dies intestate, the surviving spouse has priority over all other distributees. (Matter of Shephard, 249 AD2d 748, 749 [3d Dept 1998].) A domestic partner, however, cannot even assert a personal claim against the intestate estate. (See, Matter of Cooper, 187 AD2d 128 [2d Dept 1983], appeal dismissed 82 NY2d 801 [1993]; see also, Matter of Lasek, 144 Misc 2d 813 [Sup Ct, Onondaga County 1989] [granting summary judgment dismissing claims against decedent’s estate although claimant had lived as decedent’s partner for over 40 years and decedent had referred to her as his wife].) Furthermore, the surviving spouse and next of kin have the right to bring a wrongful death action and to collect the proceeds. (Matter of Acquafredda, 189 AD2d 504, 509 [2d Dept 1993].) The domestic partner, on the other hand, has been denied standing to bring a wrongful death lawsuit. (See, Raum v Restaurant Assocs., 252 AD2d 369 [1st Dept 1998], supra; see also, Matter of Secord v Fischetti, 236 AD2d 206 [1st Dept 1997] [finding that Crime Victims Board’s interpretation of term “surviving spouse” to exclude same sex life partners was rational], Iv denied 91 NY2d 802 [1997].)
Seventh, even upon and after the termination of a marriage, a marital partner retains substantial protections unavailable to the domestic partner. Unlike a domestic partnership, a marriage cannot be terminated by the filing of a termination statement or by the marriage of either or both of the domestic partners. Instead, as stated in article 12 of the Domestic Relations Law, particular grounds for the divorce must be asserted. *748 The spouse initiating the divorce must proceed by petition on notice pursuant to Domestic Relations Law § 221, or must begin a divorce proceeding and follow its requirements. Numerous legal protections exist relating to both spouses’ rights in the proceeding. Child custody and visitation rights are more clearly defined than they would be following the dissolution of a domestic partnership. (See, Domestic Relations Law § 34-a.) In addition, under section 32 of the Domestic Relations Law, one spouse may be found liable for the support of a former spouse. Also, principles of equitable distribution are considered in estimating and allocating property acquired by either spouse during the marriage. (See, Dolan v Dolan, 78 NY2d, supra, at 466.)
Thus, as compared to marital relationships, domestic partnerships are marked by their lack of formalization, lack of legal protections, and by the significantly fewer rights that are extended to the domestic partners. As stated, Local Law 27 merely acknowledges the rent succession laws set forth in Braschi (74 NY2d 201, supra), extends insurance benefits to the domestic partners of their own employees, and accords limited privileges to all registered domestic partners in the City. Like a similar ordinance recently upheld by the Colorado Court of Appeals, Local Law 27 “qualifies a separate and distinct group of people who are not eligible to contract a state-sanctioned marriage to receive health and dental insurance benefits from the City.” (Schaefer v City & County of Denver, 973 P2d 717, 721 [Colo Ct App 1998].) Because this purpose does not infringe on “the integrity and importance of the institution of marriage” (supra, at 721), this portion of plaintiffs’ challenge must fail.
II. Legislating Benefits Beyond Scope Authorized by Statute
Pursuant to General City Law § 20 (29), a city can contract to furnish medical, surgical and hospital services, and can contract with insurance companies for the reimbursement of these expenses. Employees paid from the city treasury have the option of subscribing to a plan or plans providing for these services for themselves “and their families.” (General City Law § 20 [29].) General City Law § 20 (29-a) further provides that retired officers and employees of city agencies and departments are entitled to health insurance for themselves “and their spouses and their dependent children”. In addition, “the widowed spouses and dependent children of employees of an agency or department” are entitled to benefits if the employee *749 died in the course of performing his or her duties. (General City Law § 20 [29-a].) General City Law § 20 (29-b) provides for the reimbursement of certain medical insurance charges incurred by retired officers or employees on behalf of themselves and their spouses if they satisfy certain other prerequisites described in the statute. Finally, General Municipal Law § 92-a describes a public corporation’s power to offer medical and related services or to offer insurance to “any retired officers and employees or group of retired officers and employees * * * of the public corporation * * * and their families.”
Plaintiffs argue that, by extending health and retirement benefits to the domestic partners of City employees, defendants’ conduct is inconsistent with these statutory guidelines. Thus, according to plaintiffs, defendants have exceeded their statutory and constitutional authority. (Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 107 [1983], supra.)
The court rejects plaintiffs’ argument. First, it is clear that those benefits extended to current employees are authorized by General City Law § 20 (29), pursuant to which defendants can furnish medical benefits to their employees “and their families”: “[T]he term family * * * should not be rigidly restricted to those people who have formalized their relationship by obtaining * * * a marriage certificate or an adoption order. The intended protection [of the law in question] should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life. In [this context,] * * * a family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence. This view comports both with our society’s traditional concept of ‘family and with the expectations of individuals who live in such nuclear units”. (Braschi v Stahl Assocs. Co., 74 NY2d 201, 211 [1989], supra.) In Braschi, the Court of Appeals determined that the plaintiff was entitled to succeed to his partner’s apartment after his death if he could show that he was the deceased’s domestic life partner. Under the provision of the New York City Rent and Eviction Regulations then in effect, succession rights vested only in the tenant’s surviving spouse or in some other family member who had been living with the tenant. (Supra, at 209, citing 9 NYCRR 2204.6.) Although the Court did not declare that the plaintiff was the spouse of the deceased tenant, it concluded that he should have the opportunity to show that he was a member of the tenant’s family. (Supra, at 211.) By using the term “family”, *750 the Court concluded, the Legislature implicitly expressed its intent “to extend protection to those who reside in households having all of the normal familial characteristics.” {Supra, at 211.)
Plaintiffs urge this court not to apply this more flexible definition of “family” to the set of facts before it. They are correct that Braschi (supra) interprets the Rent Stabilization Code, and does not on its face extend beyond the scope of that law. However, as one court noted, after Braschi, the courts of this State “can no longer afford to view society with blinders.” (Gay Teachers Assn. v Board of Educ., NYLJ, Aug. 23, 1991, at 22, col 3 [Sup Ct, NY County], affd 183 AD2d 478 [1st Dept 1992].) Gay Teachers Assn. involved a challenge, on numerous grounds, to the City Board of Education’s policy of denying insurance benefits to the domestic partners of gay and lesbian employees, although the benefits were provided to the spouses and children of employees. Reasoning that “[j]ust as the court [in Braschi] needed to expand the definition of ‘family’ to accomplish the purpose of the rent control laws * * * this court * * * has to look at the public agency’s purpose in extending health insurance benefits to an employee’s ‘husband,’ ‘wife’ and ‘unmarried children’ of certain ages and dependencies”, the court in that case denied the defendants’ motion to dismiss. {Supra, at 22, col 5.) Here, too, the court concludes that a more enlightened examination is proper.
Other New York courts also have interpreted the word “family” less rigidly outside the context of the rent stabilization laws. Matter of Fry v Village of Tarrytown (NYLJ, Apr. 14, 1998, at 31, col 1), for example, examines the term “family” in the context of zoning issues. In Fry, the Supreme Court of Westchester County found that the local Zoning Board of Appeals acted rationally in defining “family” to extend to “ ‘[a] number of persons but not exceeding two living and cooking together as a single housekeeping unit though not related by blood, adoption or marriage’ ”. (Matter of Fry v Village of Tarry-town, NYLJ, Apr. 14, 1998, at 31, col 1 [Sup Ct, Westchester County].) Indeed, the Fry court relied in part on McMinn v Town of Oyster Bay (66 NY2d 544), in which the Court of Appeals held that an ordinance containing an overly restrictive definition of “family” was unconstitutional. According to the Court, “a municipality may not seek to [preserve the character of the neighborhood] by enacting a zoning ordinance that ‘limit [s] the definition of family to exclude a household which in every but a biological sense is a single family’ ”. {McMinn v *751 Town of Oyster Bay, 66 NY2d 544, 550 [1985].) As did the Courts in these zoning cases, this court shall not read the term “family” to exclude households which operate as such.
Gaetan v Fireman’s Ins. Co. (NYLJ, Nov. 3, 1998, at 31, col 3 [Sup Ct, Suffolk County]) excluded a traditional family member from the plaintiffs “family” for the purpose of adjudicating an uninsured motor vehicle benefits case. In the context of insurance and benefits, the court noted, the term “family” often refers to “such persons as habitually reside under one roof and form one domestic circle, or such persons as are dependent on each other for support or among whom there is legal or equitable obligation to furnish support”. (Supra, at 31, col 4.) Furthermore, the court stated that according to Black’s Law Dictionary, in the context of uninsured motorist insurance coverage, “family” includes not only those in a legal or blood relationship to the insured but those who live within the insured’s domestic circle. (Supra.) Interpreting an ambiguity in the policy against the insurer, the Suffolk County Supreme Court refused to deem claimant’s father — a blood relative who did not reside with plaintiff — a “family member”, as a contrary determination would have triggered the policy’s liability limitation clause. Under the definition applied in Gaetan, a registered domestic partner would constitute a “family member”.
In challenging the laws at issue, plaintiffs also rely in part on decisions issued by other State courts regarding the domestic partner laws of other cities. However, the decisions of the courts of other States, interpreting their own statutes and ordinances, do not bind the courts of New York in interpreting New York State and local laws. (See, Matter of Moretti, 159 Misc 2d 654, 661 [Sup Ct, Kings County 1993].) To the extent that the decisions in other States have persuasive authority, the court finds that they are not inconsistent with this court’s decision. In Lilly v City of Minneapolis (527 NW2d 107 [Minn 1995]), for example, Minnesota’s Court of Appeals struck a Minneapolis ordinance which, inter alia, extended health insurance benefits to same sex domestic partners. However, under Minnesota law, cities only had the power to provide insurance benefits to city officers and employees and their dependents (supra, at 110, citing Minn Stat Annot § 471.61 [1]), which the same statute defined as the “ ‘spouse and minor unmarried children under the age of 18 years and dependent students under the age of 25 years actually dependent upon the employee.’ ” (Lilly v City of Minneapolis, 527 NW2d, at 110-111.) Because of the limiting definitions set forth within *752 the applicable statutory scheme, the court held that the local Legislature could not extend benefits to domestic partners of city employees. {Supra, at 113.)
Connors v City of Boston (Sup Ct, Mass, Dec. 11, 1998, C.A. No. 98-5734), a copy of which plaintiffs submitted to this court, also involved a local ordinance which impermissibly defined “dependents” to include domestic partners, thus bringing the provision into direct conflict with the express language of the applicable State statute. Notably, in an earlier ruling, Opinions of Justices of House of Representatives (427 Mass 1211, 696 NE2d 502 [1998]), the Massachusetts Supreme Court held that the State’s local Legislatures did have the power to define the terms “domestic partners” and “dependents”, as long as the definitions do not contradict those in the relevant State statutes.
Finally, City of Atlanta v McKinney (265 Ga 161, 454 SE2d 517 [1995]) also involved an ordinance that impermissibly broadened the definition of “dependents” beyond the scope of the State statute, in order to grant benefits to the domestic partners of city employees. Accordingly, the court struck the ordinance. {Supra.) Shortly thereafter, Atlanta enacted new legislation extending benefits only to those domestic partners who were financially dependent upon their partners, in a manner defined by the ordinance and consistent with State law. This second ordinance was upheld by the court. (City of Atlanta v Morgan, 268 Ga 586, 492 SE2d 193 [1997].)
In these other jurisdictions, then, there were direct contradictions between the ordinances and statutes that are not present here. In situations in which no such conflict existed, the local laws were upheld in the face of all challenges. Based on the applicable statutory and case law, this court concludes that those provisions extending insurance privileges to the domestic partners of current municipal employees should be upheld.
As previously noted, however {see, supra, at 748-749), Local Law 27 also contains provisions which extend coverage to the partners of retired workers and which extend certain death benefits to these individuals. One of the relevant statutes, General City Law § 20 (29-a), provides that “the widowed spouses and dependent children” of municipal employees are entitled to benefits if the employee died in the course of performing his or her duties. Another, General City Law § 20 (29-a), entitles retired officers and employees of city agencies and departments “and their spouses and their dependent children” to health in *753 surance. General City Law § 20 (29-b) provides for the reimbursement of certain medical insurance charges incurred by retired officers or employees and their spouses in certain circumstances. Finally, General Municipal Law § 92-a (2) endows the public corporation with the power to offer medical services or insurance to, inter alia, “retired officers and employees * * * of the public corporation * * * and their families.” Clearly, some of these statutes are more narrowly worded, referring to “spouses” and “dependents” rather than to “families”.
After careful consideration, the court finds that defendants did not exceed their authority with respect to these additional provisions. On this issue, the reasoning of the court in another State is highly persuasive. In Schaefer v City & County of Denver (973 P2d 717, supra), the Colorado Court of Appeals rejected a challenge to a benefits ordinance similar to the one at hand. First, the court pointed to Colorado’s home rule law, which provided that “[a]n ordinance of a home rule city supersedes a conflicting state statute if the subject matter is of purely local concern.” (Supra, at 719.) The court in Schaefer did not find that the ordinance was in conflict with State law. Nonetheless, because “the authority to define the scope of employee compensation, including benefits, is of particular importance to a local government because of its impact on a city’s ability ‘to both hire and retain qualified individuals’ ”, the court concluded that despite any conflicts the City and County of Denver had the right to legislate in this area. (Supra, at 719.)
This court does not find that in the face of clear conflict with State legislation, the ordinance would prevail. (See, McMillen v Browne, 14 NY2d 326 [1964].) As in Colorado, however, there is a recognition in New York “ ‘that essentially local problems should be dealt with locally and that effective local self-government is the desired objective’ ”. (Village of Tully v Harris, 119 AD2d 7, 10-11 [4th Dept 1986].) Furthermore, “[t]he power to determine the salary of employees has been specifically conferréd upon local governments by the ‘home rule’ article (art. IX, § 2) of the New York State Constitution.” (Ryan v Adler, 51 Misc 2d 816, 818, affd 28 AD2d 920 [2d Dept 1967], affd 21 NY2d 815 [1968].) Benefits such as the ones authorized under Local Law 27 are encompassed within the definition of “salary”. In turn, “health insurance benefits are a form of compensation ‘encompassed within the definition of terms and conditions of employment’ ”. (Matter of Police Assn. v New York *754 State Pub. Empl. Relations Bd., 126 AD2d 824, 825 [3d Dept 1987].) In light of the broad grant of power given to local governments in this area (see, McMillen v Browne, 14 NY2d, at 330-331), absent absolute conflict with statutory or constitutional authority, the courts should not intervene where the salary and benefits accorded to municipal employees are at issue.
Other arguments also support the court’s determination to defer to the local governments’ interpretation of the relevant and prevailing statutes. In the Civil Service Law, the Legislature has expressly acknowledged the importance of allowing New York’s State government the flexibility to provide competitive salary and benefits to attract individuals of “unusual merit and ability” to State employment. (Civil Service Law § 115 [applying to State employment].) In recognition of this fact, the Civil Service Law vests in the president of the Civil Service Commission the authority to define the terms “spouses and dependent children” for health insurance purposes. (E.g., Civil Service Law § 163 [2]; § 164.) Although the Civil Service Law relates to State employees, local governments have the discretion to participate in the State health insurance plan. (1985 Opns Atty Gen 86, citing Civil Service Law § 163.) In such cases, local employees would be governed by its terms. As the Commissioner of Civil Service has the power to interpret the meaning of the terms “dependent” and “spouse”, this flexibility should be read into those statutes relating to local employment contracts and benefits as well. (Cf., ibid, [in negotiating with employee unions to determine terms and conditions of employment, local governments have power to negotiate any matter not clearly prohibited].)
In at least one case, a New York court has recognized that municipalities have the discretion to interpret the term “marital status” in an insurance context. (Police Assn. v New York State Pub. Empl. Relations Bd., 126 AD2d 824 [3d Dept 1987], supra.) Under section 296 (1) (a) of the Executive Law, it is impermissible to discriminate on the basis of marital status. The City of Mount Vernon relied upon the definition of “marital status” that had evolved in case law to conclude that it was not discriminatory to deny a right or benefit based upon the identity and circumstances of the spouse — in this case, by denying benefits to those whose spouses already had comparable insurance. (Supra, at 825-826.) The Third Department emphasized the broad discretion accorded to the municipality to interpret the term “marital status”, and noted that courts must defer to the municipality absent a showing of irrationality. *755 (Police Assn. v New York State Pub. Empl. Relations Bd., 126 AD2d, at 825.) Utilizing this deferential standard, the Court held that “it was not beyond the power of respondent to adopt the interpretation placed on ‘marital status’ ”. (Supra, at 826.) In the case at hand, where the validity of an ordinance is involved, the judicial standard of review should be even more deferential. (See, City of New York v State of New York, 76 NY2d 479, 485 [1990].)
The court now applies these standards to the case at hand. Although General City Law § 20 (29-b) provides for the reimbursement of charges incurred by retired officers and their spouses, General Municipal Law § 92-a (2) describes the power to offer medical and related services or insurance to “retired officers and employees * * * of the public corporation * * * and their families.” (Emphasis supplied.) Because the General Municipal Law is more broadly worded than the General City Law, thus creating some additional ambiguity regarding legislative intent, there is no clear conflict and the municipality’s interpretation should be given force. Moreover, as the court in Schaefer (supra) noted, in the context of employment and insurance issues, the Legislature’s use of the words “dependent children” and “spouse” in describing death benefits does not necessarily evince an intent to exclude domestic partners from coverage. For, in these circumstances, the terms may well be used in a more expansive sense. (See, Schaefer v City & County of Denver, 973 P2d 717, 720-721.) As in nearly all other relevant provisions, the legislative intent here is to allow municipalities to extend benefits to families. It does not make sense that, by using the terms “spouse” and “dependent children” instead of “family” here, the Legislature would attempt to limit the municipalities’ discretion with respect to this one employment benefit. Finally, in light of the undisputed legislative intent to grant local governments the power to give their employees competitive salary and benefits packages; and the general trend toward giving greater, albeit limited, rights and recognition to unmarried domestic partners and nontraditional family units in general, it is not unreasonable for defendants to interpret the law in a fashion that allows them to keep pace with this societal as well as legislative trend.
Accordingly, this court does not find the challenged provisions either irrational or inconsistent with State law. Therefore, it dismisses the complaint. However, the court notes that in the ordinance, defendants retain the power to add rights and *756 benefits to those already listed. Any amendments to the ordinance will have to be consistent with home rule principles.
CONCLUSION
As the court is dismissing the complaint, plaintiffs motion for a preliminary injunction is moot. Thus, it is ordered that the motion for a preliminary injunction is denied; and it is further ordered that the cross motion to dismiss is granted.