# Devlin v. City of Philadelphia

*Dennis M. Abrams,* for plaintiffs.
*Donna Marshall,* for defendants.

CARRAFIELLO, *J.,* October 5, 2000—

## A. INTRODUCTION

The plaintiffs filed a complaint seeking to declare three Philadelphia ordinances invalid and to permanently enjoin the implementation of a "life partner" registry by the City of Philadelphia.

The first ordinance, promulgated as bill no. 970750, and more commonly referenced as the Fair Practices Act, governs public accommodation and employment practices as they pertain to life partners. The second ordinance, as promulgated as bill no. 970745, amends the Retirement System Ordinance, allowing employees to broadly name designated beneficiaries. The third ordi-

nance, promulgated as bill no. 970749, amends the realty transfer tax exempting transactions between life partners.

The plaintiffs have recently withdrawn their opposition to the Retirement System Ordinance amendments, limiting the issues presented.

In their complaint, the plaintiffs assert five specific counts for relief. In their first count, the plaintiffs allege that the Commonwealth of Pennsylvania has wholly occupied the field of regulation of marriage and that the City of Philadelphia is divested of the power to pass the identified legislation extending certain rights and benefits to life partners.

In their second count, the plaintiffs broadly allege that the ordinances are violative of public policy. The plaintiffs thirdly contend that extending health and pension benefits to life partners is ultra-vires. It is fourthly maintained that the City of Philadelphia is without the power and authority to exempt real estate transfers between life partners from taxation. In their fifth and final count, the plaintiffs aver that the City of Philadelphia has no authority to prevent discrimination against life partners.

The City of Philadelphia filed preliminary objections to the plaintiffs' complaint. On consideration, the Honorable Pamela Dembe sustained the preliminary objections to Counts I and II of the complaint in a court order issued on December 10, 1998. As a consequence, the state law preemption and public policy counts have been resolved by a court of concurrent jurisdiction and we are left to adjudicate the remaining contentions. Before this is done, however, preliminary issues involving standing and eligibility for relief under the Declaratory Judgment Act must be addressed.

## B. STANDING AND ELIGIBILITY FOR DECLARATORY RELIEF

In its new matter and summary judgment application, the City of Philadelphia argued that the plaintiffs lacked standing to proceed with this action. The parties submitted briefs outlining their position with regard to this issue.

The plaintiffs in this case are all taxpayers and residents of the City and County of Philadelphia. They have brought suit in this capacity. None are identified as having a direct interest in this controversy and none are described as being private employers who would be adversely affected by any of the specific legislation at issue.

In the case of *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979), it was held that a taxpayer seeking standing to sue must allege a substantial, direct, and immediate interest in the outcome of the suit unless the taxpayer can show:

(1) the governmental action would otherwise go unchallenged;

(2) those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action;

(3) judicial relief is appropriate;

(4) redress through other channels is unavailable; and

(5) no other persons are better situated to assert the claim.

There is ample precedent in this Commonwealth under the *Biester* doctrine extending standing to persons who challenge governmental actions, expenditures by state or municipal entities and the conduct of govern-

ment officials, even though they are not directly affected. See *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania,* 510 Pa. 158, 507 A.2d 323 (1986) (standing afforded to challenge constitutionality of public official compensation law); *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988) (standing granted to challenge election); *Rizzo v. City of Philadelphia,* 136 Pa. Commw. 13, 582 A.2d 1128 (1990) (standing granted in action to enjoin the payment of benefits pursuant to police pension plan).

In this case, the trial court finds that the plaintiffs do have standing to challenge actions by the City and County of Philadelphia involving the extension of employee rights and benefits as well as the transfer tax amendments. There is no indication that there are other persons who are better situated to assert the same claims. Standing is also permitted given that these ordinances involve a public expenditure of monies for public employee benefits, which otherwise might not be subject to challenge.

Applying *Biester,* the court finds that while the plaintiffs do have standing to challenge the extension of rights and benefits to city employees and the transfer tax amendments, they do not have standing to challenge the provisions of the life partner ordinance as such provisions pertain to private employment and non-public entities.

Not only do these controversies lack a public expenditure of monies, it is the private employer or property owner being adversely affected by the legislation who will be in the best position to take challenge to its provisions. It would be unfair to them to have their interests litigated by parties who have neither the same interests, knowledge or assets.

Further, we find that there is no justiciable controversy involving such parties in this action. Pursuant to the Declaratory Judgment Act, codified at 42 Pa.C.S. §7541, declaratory judgment cannot be used as a vehicle to determine rights in anticipation of events that may not occur, for consideration of moot issues, or for advisory opinions that may prove to be purely academic. *Lowther v. Roxborough Memorial Hospital,* 738 A.2d 480 (Pa. Super. 1999). A party seeking declaratory relief must establish a direct, substantial and present interest, as contrasted with a remote or speculative interest. *Bromwell v. Michigan Mutual Insurance Co.,* 716 A.2d 667 (Pa. Super. 1998). Declaratory relief is only warranted when there is an actual controversy and should not be accorded when averments are speculative and conjectural. Absent a judicial case or controversy, the matter simply is not ripe for resolution. *Brown v. Commonwealth, Liquor Control Board,* 673 A.2d 21 (Pa. Commw. 1996).

The Fair Practice Act amendments contain multiple provisions impacting upon employment, public accommodations and discrimination at large. There are a number of hypothetical controversies that could arise involving different aspects of the legislation. Whether they will or will not arise and what provisions may be challenged are all a matter of speculation.

In view of the above-stated considerations, standing and declaratory relief are limited in this case to the specific issues raised concerning city benefits and the realty transfer tax amendments.

## C. EXTENSION OF MUNICIPAL BENEFITS TO PERSONS QUALIFYING AS LIFE PARTNERS

The plaintiffs contend that Philadelphia County is without power to extend municipal benefits to persons qualifying as "life partners." A specific point of dispute arises concerning the extension of health benefits to life partners.

Article 9, Section 2 of the Pennsylvania Constitution provides that a municipality which has a home rule charter may exercise any power or perform any function not denied by the constitution, by its home rule charter, or by the General Assembly. The enabling legislation applying to cities of the first class directly confers expansive autonomy on Philadelphia County to enact ordinances governing the management of its governmental affairs. 53 P.S. §13371 provides as follows:

"The cities of the first class of this Commonwealth shall have the power to make all such ordinances, by-laws, rules and regulations not inconsistent with or restrained by the constitution and laws of this Commonwealth as may be expedient or necessary for the proper management, care, and control of the city and its finances, and the maintenance of the peace, good government, safety and welfare of the city and its trade, commerce, manufactures; and the exercise of full and complete powers for local self-government in matters of police, and the same to alter, modify and repeal at pleasure. . . ."

This authority is reiterated in 53 P.S. §13131, which provides that the city shall have complete powers of legislation and administration in relation to its municipal functions. Section 13131 allows for municipal govern-

ments to exercise any and all powers related to its municipal functions, not inconsistent with the constitution.

In conformity with the above cited, enabling legislative acts and consistent with the overall intent to confer wide latitude allowing for municipal self-governance, 53 P.S. §16254 provides that the council shall have the full power and authority to make ordinances as shall be necessary or convenient for the government and welfare of the city.

In view of the foregoing, the trial court finds that Philadelphia County is empowered to extend benefits to persons qualifying as life partners.

This determination is supported by state decisional law in other jurisdictions considering similar domestic partnership legislation. Courts in other jurisdictions have found that the extension of municipal benefits under such ordinances is a matter of local concern as it involves personnel policies and a city's ability to hire and retain a broader range of qualified employees. See *Schaefer v. City and County of Denver,* 973 P.2d 717 (1998); *Crawford v. City of Chicago,* 710 N.E.2d 91, 98 (Ill. App. 1999); *Slattery v. City of New York,* 179 Misc.2d 740, 686 N.Y.S.2d 683 (1999), *aff'd as modified,* 697 N.Y.S.2d 603, 266 A.2d 24 (1999) (modified to formally declare validity of domestic partnership law). Prohibiting the extension of such benefits may in fact place the City of Philadelphia at a competitive disadvantage with private employers who allow for such benefits.[1] The domestic partnership legislation in Philadelphia County is distin-

---

1. As noted by the Appellate Court of Illinois in *Crawford, supra,* there are approximately 500 Fortune 1000 companies that provide health benefits to domestic partners of employees.

guishable from that in a number of other states where it was found invalid for expressly conflicting with state law. It also differs from cases in other jurisdictions where there is a comprehensive state law statutory scheme encompassing the extension of municipal benefits at the local level.

In view of the broad enabling legislation, the absence of any restrictive language in state statutory law prohibiting Philadelphia from extending benefits to life partners, and the county's vested authority in regulating municipal government and in competitively attracting a broad range of highly qualified employees, the extension of city benefits inclusive of medical coverage to domestic partners is a valid exercise of authority.

## D. VALIDITY OF ANTI-DISCRIMINATORY PROVISIONS

In the fifth count of the complaint, the plaintiffs assert that the city has no authority to prevent discrimination against "life partners." While it is alleged that the amendments to the Fair Practices Act providing for such protection are unlawful, it is at the same time acknowledged that prior to its amendment, the Act prevented discrimination based upon sexual orientation.

The general prohibition against discriminatory practices is a valid exercise of power by the County of Philadelphia. As an employer, the city can contractually protect employees and provide rights and benefits to them above and beyond that which is otherwise affirmatively mandated under state or federal law.

To the extent that the provisions of the ordinance pertain to public accommodations, they are also enforce-

able. As part of its police power, the County of Philadelphia is vested with the authority to amend section 9-1105 of the Fair Practices Act to prevent the denial of public accommodations to persons merely on account of their status as life partners.

This power is manifested in the broad constitutional authority vested under Article 9, Section 2, and the enabling Act legislation found at 53 P.S. §13371. The regulation of public accommodation practice does not conflict with the provisions of the Pennsylvania Human Relations Act which apply to employers, employment agencies and labor unions. See 43 P.S. §955 et seq.

Absent an actual controversy involving the application of the ordinance to private employers, the trial court is placed in a speculative position and declaratory relief is inappropriate. There are many types of issues that can arise in such context and the specific policies and procedures of a particular employer requires consideration on its own merit.

## E. AMENDMENTS TO TRANSFER TAX PROVIDING EXEMPTION FOR LIFE PARTNERS

The plaintiffs take challenge to the newly enacted realty transfer tax exemptions for real estate transfers between life partners in the County of Philadelphia.

Pursuant to the Sterling Act, promulgated at 53 P.S. §15971, broad authority is conferred upon the City of Philadelphia to enact real estate transfer tax legislation. Through this power, the city is vested with the ability to tax transactions occurring within its bounds so long as it is not subject to state tax or a license fee. Implicit in this power is the right to promulgate exemptions.

The city's authority to impose a realty transfer tax ordinance, however, is subject to the uniformity clause found in Article VIII, Section I of the Pennsylvania Constitution. Pursuant to this constitutional mandate, all taxes must be uniform upon the same class of subjects.

In adjudicating a controversy such as that presented, the court is mindful of the presumption of constitutionality attaching to tax legislation. *Amidon v. Kane,* 444 Pa. 38, 60, 279 A.2d 53, 65 (1971). In this respect, the burden rests upon the challenger to prove clearly, plainly and palpably that it violates a constitutional provision such as the uniformity clause. *Id.* at 60, 279 A.2d at 65; see also, *F.J. Busse Co. v. Pittsburgh,* 443 Pa. 349, 357, 279 A.2d 14, 18 (1971).

In considering challenges lodged against a real estate transfer tax ordinance, the Pennsylvania Commonwealth Court, in *Equitable Life Assurance Society v. Murphy,* 153 Pa. Commw. 338, 621 A.2d 1078 (1993), held that the selection of subjects for taxation, their classifications, and the method of collection are legislative matters. The only constitutional limitation on this power is that the classification be reasonable and not arbitrary. *Id.* at 354, 621 A.2d at 1086. As otherwise stated, "[t]he test of uniformity is whether there is a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment." *Busse Co.,* 443 Pa. at 357, 279 A.2d at 18.[2]

---

2. It has been held that if a statute provides for a classification capable of two interpretations, one of which would provide for uniform taxes and the other not, the interpretation which would provide for uniform taxes is to be preferred. *American Stores Co. v. Boardman,* 336 Pa. 36, 6 A.2d 826 (1939).

In assessing reasonableness of classifications under the uniformity clause, the court may consider, among other factors, whether the classification is based upon well-grounded considerations of public policy. *Equitable Life Assurance,* 153 Pa. Commw. at 356, 621 A.2d at 1087.[3]

A review of case law in this Commonwealth reveals that tax ordinances have been invalidated under the uniformity clause when they employ graduated rates based upon income level or quantity.[4] In all of these cases, there is a common theme in which it has been found that persons within the same classification are being treated differently.

By contrast, in cases rejecting uniformity clause challenges, there is a differentiation in the subject of classification. See *e.g., Commonwealth v. Life Assurance Company of Pennsylvania,* 419 Pa. 370, 214 A.2d 209 (1965) (gross premium tax distinguishing between domestic life insurance carriers and other types of carriers validated).

Guided by these principles, the trial court turns to the realty transfer tax exemption at issue. The legislature's ability to create separate tax classifications for persons sharing certain social, familial relations and levels of fi-

---

3. As held in *Equitable Life Assurance,* a "heavy burden of demonstrating that the classification employed is unreasonable rests upon the party challenging the constitutionality of the tax." *Id.* at 356, 621 A.2d at 1087.

4. In this respect, a graduated tax applying different rates for persons with different levels of income was held unconstitutional in *Kelley v. Kalodner,* 320 Pa. 180, 181 A. 598 (1935). In a different context, it was held improper to exempt real estate transfers based upon transfers of less than a one percent ownership interest. *Equitable Life Assurance, supra.*

nancial dependency has been recognized. This is most evident through the marriage exemption for transfer taxes which has gained long-standing acceptance.

The domestic partner exemption is aimed at providing a well defined class of persons who would otherwise be ineligible from reaping the benefits of the transfer tax exemption, with a means of doing so.

By requiring such persons to meet a test of financial dependency subject to multiple guidelines, the criteria for qualification are far from arbitrary. In this instance, detailed regulations are established, requiring that the partners share a residence, share the common necessities of life, undertake responsibility for the welfare of one another, not be related by blood, be the sole life partner of one another and not have been in another life partnership within the past 12 months subject to certain limited exceptions.

Mindful of the presumption of constitutional validity and the power vested with the legislature to make classifications and to use public policy considerations as a criterion, the court finds there to be a rational basis for the classification of this subgroup of persons who otherwise would be precluded from ever receiving an exemption.

The transfer tax exemption does not conflict with or undermine any state laws or statutes and conforms with the authority vested upon the City of Philadelphia under the Sterling Act.[5]

---

5. In contrast with the cases invalidating taxes based upon the uniformity clause, the ordinance at issue does not apply different gradations to persons of the same class. It also does not apply disparate treatment based upon quantity, level of income, or any other similar ground previously held invalid.

The legislation may also be deemed to have a rational basis insofar as the ordinance is aimed at encouraging persons not eligible for marriage to remain within the confines of Philadelphia. Disfavorable tax treatment may cause such persons to leave Philadelphia or refuse to locate there, altogether depriving the city of a tax basis. Effectively, the ordinance addresses the disparate treatment faced by homosexual men and women, who cannot otherwise share some of the same benefits available to other persons.

In light of the above considerations, the trial court finds the real estate transfer tax amendments to be a valid exercise of legislative authority.

## DISPOSITIONAL ORDER

And now, to wit, October 5, 2000, on consideration of the parties' cross-motions for summary judgment, it is hereby ordered and decreed that the summary judgment application of the defendant, City of Philadelphia, is granted as follows:

(1) The extension of health benefits and other benefits to life partners by the City of Philadelphia pursuant to the Fair Practices Act and other legislation is deemed to be a valid exercise of authority.

(2) The anti-discriminatory provisions of the Fair Practices Act is deemed legal with respect to public accommodations and in terms of imposing obligations upon the City of Philadelphia as a public employer.

(3) The amendments to the transfer tax ordinance providing an exemption for life partners is found to be constitutional and legal.

(4) The registration provisions of the Fair Practices Act are deemed to be legal.

The plaintiffs lack standing and are ineligible to apply for declaratory relief for purposes of challenging the application of the Fair Practices Act to private employers and non-governmental entities.