468 So.2d 965 (1985)
STATE of Florida, et al., Appellants,
v.
BROWARD COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 66187.
Supreme Court of Florida.
April 11, 1985.
Rehearing Denied June 5, 1985.
*966 Michael J. Satz, State Atty., and Christina L. Spudeas, Asst. State Atty., Seventeenth Judicial Circuit, Fort Lauderdale, and J. Robert Miertschin, Jr. of the Law Offices of J. Robert Miertschin, Jr., Coral Gables, for appellants.
Susan F. Delegal, Gen. Counsel, Broward County, Fort Lauderdale, and Brown, Wood, Ivey, Mitchell & Petty, New York City, for appellee.
ALDERMAN, Justice.
We review the final judgment of the Circuit Court for Broward County validating resource recovery revenue bonds not exceeding $590,000,000. The trial court held that chapter 166, Florida Statutes (1983), is a valid and constitutional statute and constitutes sufficient and valid authority for the issuance of these bonds. We agree and affirm the judgment of the trial court validating these bonds.
Broward County has developed a plan for the proper disposal of solid waste in its area which requires the construction of two solid waste disposal plants at a cost approaching $590,000,000. The County first intended to finance these plants through the issuance of industrial development revenue bonds under chapter 159, Florida Statutes (1983), and on April 19, 1984, the Broward County Board of County Commissioners held a public hearing and adopted, pursuant to published notice, Resolution 84-964 entitled:
Resolution declaring the intention of Broward County to provide financing by the proposed issuance of industrial development revenue bonds in an amount of up to $590,000,000 for financing waste-to-energy facilities, land disposal facilities and the sites therefor to be leased to a private vendor.
This resolution, however, represented only an initial step in the process. In order to actually issue and market these revenue bonds, the County still had to perform the following: Select a company or companies and negotiate construction and waste disposal *967 contracts; acquire the land required for the plants; obtain the necessary federal, state, and local permits to construct and operate the plants; enter into the necessary agreements with municipalities for their services; and prepare all the documentation required to issue the bonds.
While the County was proceeding under the above financing scheme, the United States Congress passed the Deficit Reduction Act of 1984 which contains volume cap limits[1] on industrial development revenue bonds by which the County planned to finance the plants and which places limitations on the investment of such bond proceeds and reserves. Deficit Reduction Act of 1984, Pub.L. No. 98-369, §§ 621, 624, 98 Stat. 494, 915-918, 922-924 (1984). This act also provides, however, that such tax-exempt bonds could be issued without regard to the volume caps and investment limitations if an inducement resolution (an "official action") had been adopted prior to June 19, 1984, and the bonds were issued by December 31, 1984. See id., § 631, 98 Stat. at 934-937. The County determined that Resolution 84-964 qualified as an official action for purposes of the Deficit Reduction Act but determined that it could not issue industrial development revenue bonds under chapter 159 by December 31, 1984.
This change in the tax law placed the entire project in jeopardy.[2] In response, the County developed a two-step plan of financing. Because it was vital that the bonds be issued by December 31, 1984, the County would first issue revenue bonds under chapter 166 and secure the payment of principal and interest by investing the bond proceeds in United States securities. The County would then continue to proceed with the project. In the second phase, if the resource recovery plants are sold, leased, or operated by a private vendor, the present revenue bonds would be converted after notice and a full validation hearing to industrial development revenue bonds under chapter 159. If, however, the project is abandoned for any reason, the County proposed to redeem these revenue bonds, and any deficiency would be paid by the issuance of special obligation bonds.
It is important to note at this point that we review only the issuance of revenue bonds by the County under section 166.111, Florida Statutes (1983), despite any future intention of the County to convert these bonds to industrial development revenue bonds authorized and secured under chapter 159, part II. Subsequent aspects of this financing plan are not before this court, and the County's authority to issue chapter 159 bonds is not determined at this time.
To implement the first part of this complex financing scheme, the Board of County Commissioners met again on September 4, 1984, held a public hearing, and adopted Resolution 84-2053 entitled:
A resolution authorizing the issuance of not exceeding $590,000,000 aggregate principal amount of Broward County resource recovery revenue bonds for the purposes of financing a portion of the cost of the acquisition, construction and installation of a project consisting of solid waste disposal and conversion facilities located at certain sites in Broward County, Florida, and paying or providing *968 for the payment of any notes issued to finance a portion of said project; providing that such revenue bonds shall not constitute a debt, liability or obligation of Broward County or the State of Florida or any political subdivision thereof but shall be payable solely from the revenues and proceeds provided therefor; providing for the issuance of special obligation bonds payable from the half-cent sales tax under certain circumstances; making certain findings; repealing a resolution adopted on June 19, 1984, relating to similar subject matter; authorizing proceedings validating said revenue bonds; and providing an effective date.
The County then filed its complaint, seeking validation of these revenue bonds pursuant to the above resolution.
The trial court found:
1. The Resolution is a valid resolution of the County and is sufficient in form and in substance to authorize the issuance of the Bonds.
2. The Bonds have been duly authorized for proper public purposes and in the manner as required by law and when issued as provided by the Resolution and as authorized by Chapter 166, Florida Statutes, will be valid and binding obligations of the County in accordance with their terms.
3. The determination made by the County as recited in the Resolution on the basis of action taken under the Code and Tax Regulations and upon advice of its bond counsel as mentioned in paragraph (m) above will permit the Bonds to be issued on or before December 31, 1984, without regard to the volume caps established by the 1984 Act.
4. All of the terms and provisions of the Resolution are in accordance with law and are fully authorized by the Constitution and laws of the State of Florida, and are in all respects validated.
5. The County is authorized under Section 166.111, Florida Statutes, to issue the Bonds secured as to the payment of principal and interest by a pledge of the principal and interest coming due on Government Obligations (as defined in the Resolution) to be purchased from a portion of the proceeds of the Bonds.
... .
8. The complaint for Validation filed in this proceeding fully complies with all of the provisions and requirements of Chapter 75, Florida Statutes, applicable thereto and is sufficient to authorize the validation of the Bonds and the proceedings therefor, including the Resolution, and all of the provisions thereof.
9. This Court has jurisdiction to hear this cause and to render a decision herein, including all of the foregoing Findings of Fact and Conclusions of Law, and is fully authorized by law to validate the Bonds and the proceedings thereof.
10. The County shall, prior to converting the Bonds to obligations payable solely from revenues derived from the sale, operation or leasing of the Project, in accordance with Chapter 159, Florida Statutes, validate such Bonds and the contractual and financing arrangements made to secure the same. In such proceeding, notice shall be provided to counsel of record in this cause.
11... . Chapter 166, Florida Statutes, is a valid statute of the State of Florida and constitutes sufficient and valid authority for the issuance of the Bonds described herein for the purposes stated, said Bonds when issued as provided by the Resolution and the Supplemental Resolution and as authorized by said Chapter 166 will be valid and binding obligations of the County in accordance with their terms. (Emphasis added.)
The State contends that neither the public nor the State was given sufficient and adequate notice by the County that it intended to issue resource recovery revenue bonds under chapter 166, rather than industrial development revenue bonds under chapter 159. After a review of the record, we find that the judgment of validation was entered after notice to the parties and to the public as required by chapter 75, Florida Statutes (1983). Moreover, even if the nature of the bonds to be validated was *969 initially unclear, the State has presented no evidence that its ability to respond during either the validation proceeding or on appeal was prejudiced.
The State also asserts that Broward County has no authority to act as a municipality and issue revenue bonds under section 166.111, which provides:
The governing body of every municipality may borrow money, contract loans, and issue bonds as defined in s. 166.101 from time to time to finance the undertaking of any capital or other project for the purposes permitted by the State Constitution and may pledge the funds, credit, property, and taxing power of the municipality for the payment of such debts and bonds.
This Court has broadly interpreted the self-governing powers granted charter counties under article VIII, section 1(g) of the Florida Constitution.[3] In State ex rel. Volusia County v. Dickinson, 269 So.2d 9 (Fla. 1972), a charter county filed a petition for a writ of mandamus to determine whether it had the power to levy an excise tax upon the sale of cigarettes in the unincorporated areas of the county. This Court held that a charter county created under section 1(g) of article VIII was automatically vested with inherent powers of self-government, including those constitutionally granted to municipalities. Accordingly, the charter county could impose those taxes which a municipality could levy under general law.
The broad powers of charter counties set forth in article VIII, section 1, are not merely limited to the taxing power but also include those powers granted municipalities under section 166.111. In the present case, Broward County's charter provides that the County shall have all the powers granted charter counties under the Florida Constitution.[4] Moreover, its charter provides that the powers granted shall be "liberally construed in favor of the county government." Accordingly, we find that Broward County had the authority to issue revenue bonds under section 166.111.
The State argues that permitting the County to proceed under the authority of section 166.111 in the present case circumvents the purpose of article VII, section 10(c), Florida Constitution, and chapter 159, part II. We disagree. Although these plants, if constructed, are intended to be either sold to or operated by a private vendor, the bonds in this proceeding are merely the first step in a complex financing scheme. Any such sale or lease which requires compliance with chapter 159 will be addressed at that time. As the trial court found:
Despite that it is the future intention of the County to convert the bonds from bonds authorized and secured under Section 166.111, Florida Statutes, to revenue bonds authorized and secured under Chapter 159, Part II, Florida Statutes, the bonds may not by virtue of the rendition of this Judgment be represented as having been validated as revenue bonds within the meaning of said Chapter 159.
Because this bond issuance, as validated by the circuit court, does not involve the use of the County's taxing power or credit for a private vendor, we find no violation of either chapter 159 or article VII, section 10 of the Florida Constitution.
We find no merit in any of the other arguments raised by appellants.[5]
*970 Accordingly, we affirm the final judgment of the trial court.
It is so ordered.
BOYD, C.J., and ADKINS and EHRLICH, JJ., concur.
McDONALD, J., dissents with an opinion, in which OVERTON and SHAW, JJ., concur.
McDONALD, Justice, dissenting.
These bonds should not be validated. We should not approve the county's end run around the requirements of the industrial development revenue bond statute by issuing purported municipal revenue bonds when it is clear that the county does not intend to own or operate the project. Approval of the procedure used here sets a dangerous precedent for other local governments seeking to evade inconvenient limits on industrial revenue bonds.
From the first resolution in April 1984 the county clearly expressed its intention to finance the construction of solid waste disposal facilities by issuing over $500,000,000 in industrial development revenue bonds, under part II of chapter 159, Florida Statutes (1983). Before issuing industrial revenue bonds, the county had to contract with a financially responsible party capable of operating the project. § 159.29(2), Fla. Stat. (1983).[*] Passage of the Tax Reform Act of 1984, part of Pub.L. 98-369, threatened the tax-exempt status of the industrial revenue bonds unless the county could issue the bonds by December 31, 1984. The county saw that it could not secure a contractor to build and operate the complex proposed project under the time deadlines imposed by the federal tax law changes. The county then decided that, as a charter county, it could issue the bonds as municipal revenue bonds under section 166.111, Florida Statutes (1983), and avoid the timeconsuming requirements of chapter 159 until such time as the county selected a project operator. The trial court validated the bonds as section 166.111 municipal revenue bonds for issuance now, with projected conversion to chapter 159 industrial revenue bonds in a separate bond validation proceeding later.
I agree with the county's contention that a charter county may exercise all municipal powers consistent with general and special law. State ex rel. Volusia County v. Dickinson, 269 So.2d 9 (Fla. 1972). As a charter county, the county has the power to issue municipal revenue bonds as defined in section 166.101, Florida Statutes, under the proper circumstances. The facts set out above demonstrate the county's intention throughout these proceedings to finance and operate the proposed solid waste disposal facilities with chapter 159 industrial revenue bonds. The validation judgment speaks of the county's "future intention" to convert these ostensible municipal revenue bonds to industrial revenue bonds. On the contrary, this "future intention" was always a present one. The county's change of position served to frustrate the state and others challenging the bonds as industrial revenue bonds, but did not change the reality of the transaction. I would not exalt form over substance, as the majority must do to classify these bonds as municipal revenue bonds. Simply stated, these bonds are outside those authorized by section 166.101.
*971 The county freely concedes its inability to meet the requirements of chapter 159 by securing a creditworthy project operator before issuing the bonds. The county argues that the time constraints imposed by federal tax changes required it to follow the complex procedure set out in the trial court's bond validation judgment. I do not challenge the county's need for the project; I do challenge the county's right to issue municipal revenue bonds and later convert those bonds to industrial revenue bonds. The county has shown neither statutory nor administrative authority for such a conversion procedure. Approving the conversion procedure adopted in this case would permit local governments to issue municipal revenue bonds containing only vague assertions about the repayment revenue source. Nowhere are such free-floating bonds authorized.
In conclusion, I believe the substance of these bonds should control over their form. The county's bonds were always industrial revenue bonds, not municipal revenue bonds. The county's failure to meet the proper requirements is fatal to validation. I would reverse the judgment of validation and declare the bonds void.
OVERTON and SHAW, JJ., concur.
NOTES
[1] This section limits the amount of tax-exempt bonds which can be issued in a state in any given year. The 1984 ceiling limitation for "private activity" bonds in Florida was $1,562,400,000. See Rev.Proc. 84-85, 1984-53 I.R.B. 16.
[2] The County asserts in its brief that not proceeding by December 31, 1984, and thus subjecting the financing to the limitation of the Deficit Reduction Act, would have a two-fold effect. First, because the plants were projected to cost $590,000,000 and the entire State of Florida volume cap allocation would be approximately three times that amount, based on 1984 allocations, there would have been a serious question as to whether, given the competition from other issuers in this State, Broward County could secure the requisite allocation. Second, because the bond proceeds and the funded debt service reserve funds could not be invested so as to make a profit based on the difference in interest rate between tax-exempt bonds and taxable investments, the County would lose millions of dollars in investment profits which otherwise could reduce the size of the bond issue with a consequent reduction in debt service costs.
[3] This section provides that a charter county "shall have all powers of local self-government not inconsistent with general law or with special law approved by a vote of the electors." Art. VIII, § 1(g), Fla. Const.
[4] Broward County's charter expressly follows the language of article VIII, section 1(g), Florida Constitution, and provides, "that the county shall have all powers of local self government not inconsistent with general law, or with special law approved by vote the electors." Broward County Home Rule Charter, Art. I, § 1.03.A.
[5] Relative to appellants' arguments regarding the County's authority to issue special obligation bonds under section 218, Florida Statutes (1984), as originally proposed, we find that all references to the authority to issue special obligation bonds or to pledge the half-cent sales tax were deleted by Resolution No. 84-3097, adopted by the county commissioners on December 18, 1984, and consequently are not part of this validation proceeding.
[*] This subsection provides:

No financing agreement for a project shall be entered into with a party that is not financially responsible and fully capable and willing to fulfill its obligations under the financing agreement, including the obligations to make payments in the amounts and at the times required; to operate, repair, and maintain at its own expense the project leased; and to serve the purposes of this part and such other responsibilities as may be imposed under the financing agreement. In determining the financial responsibility of such party, consideration shall be given to the party's ratio of current assets to current liabilities; net worth; earning trends; coverage of all fixed charges; the nature of the industry or activity involved; its inherent stability; any guarantee of the obligations by some other financially responsible corporation, firm, or person; and other factors determinative of the capability of the party, financially and otherwise, to fulfill its obligations consistently with the purposes of this part.