766 So.2d 1199 (2000)
Lawrence LOWE, Appellant,
v.
BROWARD COUNTY, Appellee.
No. 4D99-1664.
District Court of Appeal of Florida, Fourth District.
September 20, 2000.
*1201 M. Glen Curran of Curran and Curran, Fort Lauderdale, Jordan W. Lorence, and Jonathan P. Gundlach of Northstar Legal Center, Fairfax, Virginia, for appellant.
Edward A. Dion, County Attorney for Broward County, Andrew J. Meyers, Chief Appellate Counsel, and Tamara M. Scrudders, Assistant County Attorney, Fort Lauderdale, for appellee.
Dean J. Trantalis, Lighthouse Point, Stephen R. Scarborough, and Marvin Peguese of Lambda Legal Defense and Education Fund, Inc., Atlanta, Georgia for Amicus Curiae-Broward County Log Cabin Republican Club of Florida, Congregation Etz Chaim, The Dolphin Democratic Club, Equality Florida, Fort Lauderdale Business Network, Gay and Lesbian Community Center of Fort Lauderdale, Gays United Against Repression and Discrimination, Parents, Families, and Friends of Lesbians and Gays, Political Advocacy Coalition Political Action Committee, and The Sunshine Cathedral Metropolitan Community Church.
GROSS, J.
This case concerns the constitutionality of the Broward County Domestic Partnership Act under Article VIII, Section 1(g) of the Florida Constitution. Except for one section which is severable from the Act, we hold that the ordinance is constitutional.
In January 1999, the Board of County Commissioners of Broward County ("Board") enacted Ordinance 199-03, the Broward County Domestic Partnership Act of 1999 ("DPA" or "Act"). The Act, as amended, became effective on April 27, 1999. The amended version of the Act is the subject of this appeal.[1]

*1202 The Domestic Partnership Act

Section 16½-151 contains the legislative findings of the Board. The Board found that "there are many individuals who establish and maintain a significant personal, emotional, and economic relationship with another individual" and that "[i]ndividuals forming such domestic partnerships often live in a committed relationship." BROWARD CO., FLA.CODE § 16½-151(a) (1999). The section focuses on the problem of the denial of employment benefits to domestic partners:
Domestic partners are often denied public and private sector benefits because there is no established system for such relationships to be registered or recognized. In addition, because of the status of their relationship, domestic partners in many cases are not extended certain employment benefits that are otherwise made available to other employees.
Id. After recognizing the importance of employment benefits to an employee's compensation package, the ordinance makes the legislative finding that
the provision of domestic partner benefits promotes employee recruitment, employee retention, and employee loyalty. Furthermore, the provision of such benefits promotes fairness and serves to address the discriminatory effect of practices which deny such benefits solely upon the basis of an employee's familial or marital status.
BROWARD CO., FLA.CODE § 16½-151(d) (1999).
The Act defines "domestic partners" as "only two adults who are parties to a valid domestic partnership relationship and who meet the requisites for a valid domestic partnership relationship as established pursuant to section 16½-153." BROWARD CO., FLA.CODE § 16½-152(e) (1999). The "requisites for a valid domestic partnership relationship" are contained in section 16½-153(b), which requires that in a declaration of a domestic partnership each partner must swear or affirm that:
(1) Each person is at least 18 years old and competent to contract;
(2) Neither person is married nor a partner to another domestic partnership relationship;
(3) They are not related by blood;
(4) Consent of either person to the domestic partnership relationship has not been obtained by force, duress, or fraud; and
(5) Each person agrees to be jointly responsible for each other's basic food and shelter.
BROWARD CO., FLA.CODE § 16½-153(b)(1)-(5) (1999). A domestic partner of a county employee is defined as a "dependent" with regard to domestic partnership benefits. BROWARD CO., FLA.CODE § 16½-152(f) (1999). Whether a partner qualifies as a dependent "shall be based solely on whether such person is supported, in whole or in part, by the County employee's earnings and relies on such support." Id. A "valid domestic partnership relationship" may be registered under the Act by the filing of "a declaration of domestic partnership with the Broward County Records Division" which complies with the requirements of the Act. BROWARD CO., FLA.CODE § ½-153(a) (1999).
Once a domestic partnership relationship has been registered under the Act, either partner may terminate it "by filing a notarized declaration of termination" with the County Records Division. BROWARD CO., FLA.CODE § 16½-154(a) (1999). The domestic partnership relationship automatically terminates if one of the partners "enters into a legal marriage or dies." BROWARD CO., FLA.CODE § 16½-154(b) & (c) (1999).
The major effect of the Act is to extend benefits and privileges to a domestic partner or to a dependent of such domestic partner.[2] A county employee is "entitled *1203 to elect insurance coverage for his or her domestic partner or a dependent of such domestic partner on the same basis in which any County employee may elect insurance coverage for his or her spouse or dependents." BROWARD CO., FLA.CODE § 16½-156(a) (1999). A county employee may use all forms of leave provided by the county, such as "sick leave, annual leave, family illness leave and bereavement leave to care for his or her domestic partner or the dependent of the domestic partner." BROWARD CO., FLA.CODE § 16½-156(b) (1999). Unless prohibited by state or federal law, any other benefit available to the spouse and dependents of a county employee "shall be made available on the same basis to the domestic partner" and dependent of such partner. BROWARD CO., FLA.CODE § 16½-156(c) (1999).
The DPA also grants domestic partners visitation rights at health care, licensed residential, county correctional, and juvenile detention facilities. BROWARD CO., FLA. CODE §§ 16½-158, 16½-161 (1999). Under the Act, a registered domestic partner has "the same right as any other individual to be designated as health care surrogate of his or her domestic partner pursuant to Part II of Chapter 765, Florida Statutes" and as "preneed guardian pursuant to section 744.3045, Florida Statutes." BROWARD CO., FLA.CODE §§ 16½-159, 16½-160 (1999).

The Litigation in the Circuit Court
In February 1999, appellant Lawrence Lowe filed a declaratory judgment action under Chapter 86, Florida Statutes (1999). He alleged that he was a resident of Broward County and a property owner and taxpayer there. Lowe's complaint sought a ruling that the DPA violated Article VIII, Section 1(g) of the Florida Constitution. The county moved to dismiss arguing that Lowe lacked standing to challenge the Act. The circuit judge held that Lowe had standing to bring the case, a finding that the county has not cross-appealed.[3] The county filed its answer on April 9, 1999. Lowe filed motions for summary judgment. The trial court's April 30, 1999 final judgment rejected Lowe's constitutional challenge and denied his request for declaratory and injunctive relief.

Constitutional Parameters of the Self Governing Power of a Charter County
Lowe contends that the Act violates Article VIII, Section 1(g) of the Florida Constitution, which provides in pertinent part:
Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by the vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law.
The bases of Lowe's constitutional argument are that the Act improperly encroaches upon an area of exclusive state authority and that it conflicts with Florida law.
We begin with the applicable standard of review. "A trial court decision on the constitutionality of a statute is reviewed by the de novo standard, because it presents a pure issue of law. The appellate court is not required to defer to the judgment of the trial court." State, Dep't of Ins. v. Keys Title & Abstract Co., 741 So.2d 599, 601 (Fla. 1st DCA 1999), rev. denied, No. SC96906, ___ So.2d ___ (Fla. July 24, 2000). "A regularly enacted ordinance will be presumed to be valid until the contrary is shown, and a party who seeks to overthrow such an ordinance has the burden of establishing its invalidity." State ex rel. Office Realty Co. v. Ehinger, 46 So.2d 601, 602 (Fla.1950) (citation omitted). An appellate court will "indulge every reasonable presumption in favor of an ordinance's constitutionality." City of *1204 Pompano Beach v. Capalbo, 455 So.2d 468, 469 (Fla. 4th DCA 1984).
As political subdivisions of the state, counties "derive their sovereign powers exclusively from the state." Hollywood, Inc. v. Broward County, 431 So.2d 606, 609 (Fla. 4th DCA 1983). A charter county such as Broward County obtains its sovereign powers through Article VIII, Section 1(g) of the state constitution. See id. The supreme court has "broadly interpreted the self-governing powers granted charter counties under article VIII, section 1(g)." State v. Broward County, 468 So.2d 965, 969 (Fla.1985).
The legislature has accorded counties broad self-governing powers. Section 125.01(1), Florida Statutes (1999), "grants to the governing body of a county the full power to carry on county government." Speer v. Olson, 367 So.2d 207, 211 (Fla. 1978). Section 125.01(3)(a), Florida Statutes (1999), states that the powers enumerated in the section "shall not be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such powers enumerated, including, specifically, authority to employ personnel...." Section 125.01(3)(b), Florida Statutes (1999), provides that the provisions of section 125.01 "shall be liberally construed... to secure for the counties the broad exercise of home rule powers authorized by the State Constitution."

Matters Purely of Statewide Concern Under City of Miami Beach v. Fleetwood Hotel, Inc.

Lowe's first constitutional argument relies on City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801, 804 (Fla.1972), to contend that the Act is invalid because it involves the county's intrusion into an area that is one of purely statewide concern.[4] In Fleetwood Hotel, the supreme court confronted a constitutional challenge to a rent control ordinance enacted by the City of Miami Beach. One holding of the court was that in passing the ordinance, the City exceeded the power afforded a municipality under Article VIII, Section 2 of the Florida Constitution. See id. Discussing the interplay between local governments and the state, the court declared:
"Matters that because of their nature are inherently reserved for the State alone and among which have been the master and servant and landlord and tenant relationships, matters of descent, the administration of estates ... and many other matters of general and statewide significance, are not proper subjects for local treatment...."
Id. (quoting Wagner v. Mayor and Municipal Council of City of Newark, 24 N.J. 467, 132 A.2d 794, 800 (1957)). The court went on to quote a concurring opinion of Justice Cardozo when he sat on the New York Court of Appeals:
"There are other affairs exclusively those of the state ... None of these things can be said to touch the affairs that a city is organized to regulate, whether we have reference to history or to tradition or to the existing forms of charters."
Fleetwood Hotel, 261 So.2d at 804 (quoting Adler v. Deegan, 251 N.Y. 467, 167 N.E. 705, 713 (1929), amended on other grounds, 252 N.Y. 615, 170 N.E. 164 (1930) (Cardozo, J., concurring)). The supreme court concluded that the rent control ordinance was unconstitutional, since it purported to regulate the landlord tenant relationship, a matter "inherently reserved for the State alone." Fleetwood Hotel, 261 So.2d at 804 (citation omitted).
The constitutional principle enunciated in Fleetwood Hotel under Article VIII, Section 2 is equally applicable to the constitutional challenge in this case under Article VIII, Section 1(g). If an area is truly one of statewide concern, it is no more a proper subject of a charter government's *1205 legislation than it would be for that of a municipal government.
The law of domestic relations is one matter reserved for the state alone. See Adler v. Deegan, 251 N.Y. 467, 167 N.E. 705 (1929) (Cardozo, J., concurring), amended on other grounds, 252 N.Y. 615, 170 N.E. 164 (N.Y.Ct.App.1930); Wagner, 132 A.2d at 800. The issue in this case is whether the Act improperly legislates in the area of domestic relations. As Justice Cardozo recognized, "a zone ... exists where state and [local government] concerns overlap and intermingle." Adler, 167 N.E. at 713 (Cardozo, J., concurring). The constitutional line between permissible and overreaching county legislation is imprecise. Lowe argues for a low threshold, that a Fleetwood Hotel constitutional violation occurs when a county ordinance "implicates" or "encroaches" upon domestic relations law. Given the constitutional and statutory breadth accorded to a charter county's self-governing powers, the better test is to invalidate a local ordinance only where its subject is "in a substantial degree a matter of state concern." Adler, 167 N.E. at 714 (Cardozo, J., concurring).
The Act does not legislate within that domestic relations zone that is reserved for the state. The DPA does not curtail any existing rights incident to a legal marriage, nor does it alter the shape of the marital relationship recognized by Florida law. This is in contrast to the rent control ordinance at issue in Fleetwood Hotel, which modified the freedom to contract within a landlord and tenant relationship and overrode statutory remedies available to landlords that had been derived from the common law. See Fleetwood Hotel, 261 So.2d at 806.
Courts have long acknowledged the state interests behind domestic relations law. In Kulko v. Superior Court of California, 436 U.S. 84, 98, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the Supreme Court recognized the state's "substantial interests in protecting the welfare of its minor residents and in promoting to the fullest extent possible a healthy and supportive family environment...." The Florida Supreme Court has pointed to "the well settled principle that the law imposes on civilized man the duty to provide food, shelter and raiment for his own." McRae v. McRae, 52 So.2d 908, 909 (Fla.1951) (quoting Pollack v. Pollack, 159 Fla. 224, 31 So.2d 253, 254 (1947)). This court has referenced the "strong public policy which exists in this state in favor of the natural family unit." In re Guardianship of D.A. McW., 429 So.2d 699, 703-04 (Fla. 4th DCA 1983), approved, 460 So.2d 368 (Fla. 1984), superseded by statute on other grounds as noted in Barnes v. Frazier, 509 So.2d 401 (Fla. 5th DCA 1987); see § 741.04(1), Fla. Stat. (1999) (providing that the "state has a compelling interest in promoting not only marriage but also responsible parenting").
Because of the state interest in the family unit, domestic relations law creates obligations and rights and imposes duties without regard to the wishes of the parties. In this area, the interest of the state often overcomes a married couple's privacy interests.
As the trial court observed, the Act does not address the panoply of statutory rights and obligations exclusive to the traditional marriage relationship:
[D]omestic partners under the [Act] ... do not ... enjoy the numerous additional rights reserved exclusively to partners in marriage. Some of the rights that are exclusive to the marriage relationship include: the right to jointly adopt (Fla.Stat. § 63.042(2)(a)); equal rights in property acquired during the marriage (Fla.Stat. § 61.075); the right to hold property as tenants by the entireties (Fla.Stat. § 689.11); the right to rehabilitative or permanent alimony in a proceeding for the dissolution of marriage (Fla.Stat. §§ 61.071, 61.08); the right to an elective share in the estate of a deceased spouse (Fla.Stat. § 732.102); the right to enter into a gestational surrogacy agreement (Fla.Stat. § 742.15(1)); distribution rights in *1206 homestead property (Fla. Stat. § 732.401; Fla. Const. Art. 10, § 4(c)); legitimacy of children born out of wedlock upon the marriage of the parents (Fla.Stat. § 742.091); and, certain state and federal tax benefits.
The Act does not reflect a legislative value judgment that elevates a non-traditional personal relationship to equal status with the marital relationship created under Chapter 741, Florida Statutes (1999).
We disagree with Lowe's contention that the Act has created a "new marriage-like relationship." Lowe points to similarities between a domestic partnership and a marriage which are superficial, with many pertaining to the legal requirements for forming the relationship. For example, the requirement that a domestic partner be at least 18 is more akin to the minimum age for the capacity to contract than it is a hallmark of a marriage. Compare BROWARD CO., FLA.CODE § 16½-153(b)(1) (1999) with § 743.07(1), Fla. Stat. (1999) (removing disability of age for persons 18 years of age or older) and § 741.0405, Fla. Stat. (1999) (detailing when a marriage license may be issued to persons under 18 years of age).
The Act does not create a legal relationship that, because of the interest of the state, gives rise to rights and obligations that survive the termination of the relationship. Unlike a traditional marriage, a domestic partnership is purely contractual, based on the mutual agreement of the parties. See S.D. Myers, Inc. v. City & County of San Francisco, No. C97-04463 CW (N.D.Cal. May 2, 1999) (order denying plaintiffs motion for summary judgment and granting defendant's cross-motion for summary judgment). To paraphrase Yogi Berra, when one member of the domestic partnership says it is over, it is over. See BROWARD CO., FLA.CODE § 16½-154(a) (1999).
For these reasons, we conclude that the Act does not intrude to a substantial degree into a matter inherently reserved for the state alone.
We agree with those courts that have considered similar constitutional attacks on similar legislation and have found no constitutional violation. See Schaefer v. City & County of Denver, 973 P.2d 717, 721 (Colo.App.1998); Crawford v. City of Chicago, 304 Ill.App.3d 818, 237 Ill.Dec. 668, 710 N.E.2d 91, 99 (1999); Slattery v. City of New York, 179 Misc.2d 740, 686 N.Y.S.2d 683, 691 (Sup.Ct.), aff'd as modified by 266 A.D.2d 24, 697 N.Y.S.2d 603 (1999). The Act primarily extends employment benefits and grants visitation rights at county facilities to a certain category of beneficiaries. It allows the county to compete with companies in the private sector that "offer insurance and other benefits to cohabiting same-sex couples." Crawford, 237 Ill.Dec. 668, 710 N.E.2d at 99. As the court in Crawford noted:
The competition in the job market involving employees from laborers to professionals must be dealt with by an employing [governmental] entity on a practical and realistic level if it is to possess the ability to hire and retain qualified individuals to serve the community.
237 Ill.Dec. 668, 710 N.E.2d at 98 (citations omitted); see also Slattery, 686 N.Y.S.2d at 693. The Act is a political decision by an elected body. Its wisdom is more properly addressed at the ballot box and not by a court as a matter of constitutional principle.

Inconsistency With State Law
Lowe next argues that the DPA violates the inconsistency portion of Article VIII, Section 1(g) which states that the "governing body of a county operating under a charter may enact county ordinances not inconsistent with general law."
There are "two separate and distinct ways that a local government ordinance may be found to be inconsistent with state law[.]" Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 831 (Fla. 1st DCA 1996). First, the local government ordinance *1207 must not specifically conflict with a state statute. See id.; City of Casselberry v. Orange County Police Benevolent Ass'n, 482 So.2d 336, 340 (Fla.1986). The supreme court has written that the test of such a conflict
is whether one must violate one provision in order to comply with the other. Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661 (Fla. 3d DCA 1976). Putting it another way, a conflict exists when two legislative enactments "cannot co-exist." E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir.1970), pet. dismissed, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 12 (1970); Metropolitan Dade County v. Santos, 430 So.2d 506 (Fla. 3d DCA 1983), pet. for review denied, 438 So.2d 834 (Fla.1983).
Laborers' Int'l Union of N. Am., Local 478 v. Burroughs, 541 So.2d 1160, 1161 (Fla. 1989) (quoting Laborers' Int'l Union of N. Am., Local 478 v. Burroughs, 522 So.2d 852, 856 (Fla. 3d DCA 1987)).
The second way an ordinance may be inconsistent with state law is if the legislature "has preempted a particular subject area." Tallahassee Mem'l, 681 So.2d at 831 (citation omitted). Florida law recognizes two types of preemption: express or implied. See Santa Rosa County v. Gulf Power Co., 635 So.2d 96, 101 (Fla. 1st DCA 1994). For the legislature to expressly preempt an area, the preemption language of the statute must be specific; "express preemption cannot be implied or inferred." Hillsborough County v. Florida Restaurant Ass'n, 603 So.2d 587, 590 (Fla. 2d DCA 1992). Writing for the first district, Judge Wolf has observed that implied preemption
is a more difficult concept. The courts should be careful in imputing an intent on behalf of the Legislature to preclude a local elected governing body from exercising its home rule powers. Implied preemption should be found to exist only in cases where the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature. The scope of the preemption should also be limited to the specific area where the Legislature has expressed their will to be the sole regulator.
Tallahassee Mem'l, 681 So.2d at 831(citations omitted).
Lowe contends that section 741.212, Florida Statutes (1999), "directly preempt[s]" the DPA. Section 741.212 provides:
(1) Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.
(2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.
(3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.
(Emphasis supplied).
The statute is directed at "[m]arriages between persons of the same sex" and "relationships between persons of the same sex which are treated as marriages in any jurisdiction." (Italics supplied). *1208 We agree with the trial court that the DPA's extension of limited employment benefits does not create a "marriage-like relationship" in contravention of the statute.
The statute is directed at same sex marriages, with all the rights and obligations of traditional marriages, or their equivalent by any other name. The DPA is not limited to persons of the same sex. The Act provides benefits to domestic partners. It does not create that plethora of rights and obligations that accompany a traditional marriage. See S.D. Myers, No. C97-04463.
Finally, as the county observes in its brief, the primary impetus behind the passage of section 741.212 was the fear that the full faith and credit clause of the federal constitution would require Florida to recognize same-sex marriages if another state recognized such a union. See Fla. H. Comm. on Govtl Ops., Report on HB147 Relating to Same Sex Marriages, 1, 3 (1997). This supports a reading of the statute where the term "marriage" connotes a marriage in the traditional sense, with all the accompanying rights and obligations.
The domestic partnership recognized by the DPA does not rise to the level of a "marriage" or a "relationship[] ... treated as [a] marriage[]" within the meaning of section 741.212. As we have written above, the scope of the DPA is far more limited. There is no direct conflict between the statute and the Act, nor does the statute expressly preempt it.
Lowe next argues that insofar as the DPA extends health insurance benefits to domestic partners, it is "expressly preempted" by section 112.08(2)(a), Florida Statutes (1999), which provides, in pertinent part:
Every local governmental unit is authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit and for health, accident, hospitalization, and legal expense insurance for the dependents of such officers and employees upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance.
(Emphasis supplied).
Lowe first argues that since the statute mentions "employees" and "dependents," it should be construed as excluding all other unmentioned categories of individuals, including "domestic partners." Under that rule of construction, "when a law expressly describes the particular situation in which something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded." Gay v. Singletary, 700 So.2d 1220, 1221 (Fla.1997) (citation omitted); see Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996) ("Under the principle of statutory construction, expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another.") (citation omitted). That principle does not apply here, because the word "dependents" connotes a general concept without precise definition, so that it cannot be said that it "expressly describes the particular situation in which something should apply." Gay, 700 So.2d at 1221.
Lowe relies on Farmer v. Broward County, 632 So.2d 658 (Fla. 4th DCA 1994). However, Farmer is distinguishable as well as instructive about the application of the principle of statutory construction set forth in Gay.
Farmer involved the constitutionality of a Broward County ordinance that allowed the imposition of a lien upon "any person who ... received any assistance" from an appointed criminal defense attorney. Id. at 659. Section 27.56(1)(a), Florida Statutes (1991), allowed a court to assess attorney's fees against any defendant "who has been determined to be guilty of a criminal act by a court or jury or through a plea." *1209 Farmer at 659. Section 27.56(2)(a) permitted the county to impose a lien to collect attorney's fees imposed under subsection (1).
We interpreted the state statute to preclude the assessment of attorney's fees against acquitted defendants. The statute created two clearly defined classes of criminal defendantsthose determined to be guilty of a criminal act and those determined to be not guilty. The failure to include the "not guilty" class of defendants in section 27.56(1) required that the statute be read to exclude them, because a court may not expand such a sharply defined statutory classification by implication. The use of the term "dependents" in section 112.08(2)(a) is far more vague than the language at issue in Farmer.
Lowe next argues that domestic partners under the DPA are not "dependents" within the meaning of section 112.08(2)(a). That section does not define the term. Lowe points to other sections of the Florida Statutes and the Florida Administrative Code which construe the same or related terms.[5] These statutory citations only illustrate that when the legislature wishes to give the term "dependent" a precise definition, it is capable of doing so. That the term "dependent" allows for varying definitions evinces a legislative intent not to limit possible definitions, but to allow some flexibility for local governments to develop insurance plans to meet local needs.
Where a statute fails to specifically define a term, a court seeking meaning may look to the plain and ordinary meaning of the term. See Moonlit Waters Apartments, 666 So.2d at 900 ("In construing a statute, we look first to the statute's plain meaning."); see also Southeastern Fisheries Ass'n v. Dep't of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984); Pedersen v. Green, 105 So.2d 1, 4 (Fla. 1958); Lumbermens Mut. Cas. Co. v. Acosta, 452 So.2d 1060 (Fla. 3d DCA 1984) (applying standard English definition of "dependent").
One definition of a dependent is "[r]elying on or requiring the aid of another for support"; "[o]ne who relies on another esp. for financial support." THE AMERICAN HERITAGE COLLEGE DICTIONARY, 373 (3d ed.1993); see also THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, 387 (1967) (defining the noun "dependent" as "a person who depends on or needs someone or something for aid, support, favor, etc."). We read the DPA to include the notion of dependency in the definition of a domestic partner. Under the Act, the classification of a domestic partner as a dependent of a county employee is "based solely on whether such person is supported, in whole or in part, by the County employee's earnings and relies on such support." BROWARD CO., FLA.CODE § 16½-152(f) (1999). The DPA's definition of "dependent" is consistent with the term's plain meaning in section 112.08, not expressly preempted by it. See City of Atlanta v. Morgan, 268 Ga. 586, 492 S.E.2d 193, 194 n. 3 (1997) (construing Atlanta domestic partnership ordinance in light of a Georgia statute giving municipalities the authority to provide certain benefits for "its employees, their dependents, and their survivors").
Lowe relies heavily on Connors v. City of Boston, 430 Mass. 31, 714 N.E.2d 335, 342 (1999), a case where the Massachusetts Supreme Judicial Court held that a Boston domestic partnership law conflicted with a Massachusetts statute that defined "dependents" as an employee's spouse, unmarried children under nineteen years of age, and certain other children of the employee.
Connors reasoned that the statute evinced the legislature's intent that it provide the exclusive manner in which a city *1210 could expend funds for its employees' health insurance. The court found that the explicit definition of "dependents" precluded individual cities from expanding the category, concluding "that there was an `express legislative intent to forbid local activity on the same subject.'" Connors, 714 N.E.2d at 340 (citation omitted). The court rejected the plaintiffs' claims that the ordinance created the equivalent of a common-law marriage for registered domestic partners, but recognized that "the category of covered dependents of city employees... no longer fully reflects all household members for whom city employees are likely to have continuing obligations to provide support"; however, the court found that any expansion of the term "dependents" could not come from the court: "[a]djustments in the legislation to reflect these new social and economic realities must come from the Legislature." Id. at 341-42.
Connors is distinguishable from this case because, as we have observed above, section 112.08 does not define "dependent" in a way that limits the County's legislative prerogative and precludes it from extending benefits to domestic partners.
Lowe next argues that section 16½-158(c) of the DPA conflicts with section 765.401, Florida Statutes (1999). Section 765.401 sets forth an order of priority applicable in the absence of a patient's designation of a person to make health care decisions under Chapter 765; under the order of priority a spouse and adult children are ahead of a "close friend" of the patient. Section16½-158(c) of the DPA accords a domestic partner of a patient "the same rights as would a spouse or other family member with respect to ... the making of health care decisions for the patient ... to the extent that a patient ... has not executed a valid power of attorney for health care or a health care surrogate designation." To the extent that the DPA overrides the order of priority established by section 765.401, it is in conflict with it.
The Act contains a severability provision. We conclude that section 16½-158(c) is severable from the remainder of the DPA. The supreme court has explained that:
[s]everability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions. See State v. Calhoun County, 126 Fla. 376, 383, 170 So. 883, 886 (1936). This doctrine is derived from the respect of the judiciary for the separation of powers, and is "designed to show great deference to the legislative prerogative to enact laws." Schmitt v. State, 590 So.2d 404, 415 (Fla.1991).
The severability analysis answers the question of whether "the taint of an illegal provision has infected the entire enactment, requiring the whole unit to fail." Schmitt, 590 So.2d at 414. Stated simply: "The severability of a statutory provision is determined by its relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent." Martinez v. Scanlan, 582 So.2d 1167, 1173 (Fla. 1991) (quoting Eastern Air Lines, Inc. v. Dep't of Revenue, 455 So.2d 311, 317 (Fla.1984)).
Ray v. Mortham, 742 So.2d 1276, 1280 (Fla.1999). Without the unconstitutional section, the Act still accomplishes its primary legislative intent to promote "employee recruitment, employee retention, and employee loyalty." BROWARD CO., FLA. CODE § 16½-151(d) (1999). Section 16½-158(c) is far from being the centerpiece of the legislation.
We reject Lowe's contention that the DPA violates section 741.211, Florida Statutes (1999), which prohibits recognition of common law marriages. A common law marriage is "[a] marriage that takes legal effect, without license or ceremony, when a couple live together as husband and wife, intend to be married, and hold themselves out to others as a married couple." BLACK'S LAW DICTIONARY 986 (7th *1211 ed.1999). When recognized in Florida, common law marriages were given the "same dignity and recognition" as was accorded to ceremonial marriages. Budd v. J.Y. Gooch Co., 157 Fla. 716, 27 So.2d 72, 74 (1946). Elements of common law marriage in Florida include cohabitation and the essential element of a mutual agreement between the parties "to be husband and wife." Phillips v. Phillips, 215 So.2d 83, 84 (Fla. 3d DCA 1968) (citation omitted). As discussed above, a domestic partnership created by the Act does not rise to the level of a traditional marital relationship.
We find no constitutional violation as a result of section 798.02, Florida Statutes (1999), which makes it a second degree misdemeanor for "any man and woman, not being married to each other" to "lewdly and lasciviously associate and cohabit together." We agree with the trial court that there is no conflict between the DPA and the statute because the DPA's extension of benefits does not depend on the sexual relationship between the members of the domestic partnership.
Finally, Lowe argues that Title XLIII, Florida Statutes (1999) (Chapters 741-759) impliedly preempts the Act because it comprises a "scheme of legislation" demonstrating the "intent of the legislature to exclusively regulate ... the field of domestic relationships." Analysis under this argument is practically identical to Lowe's argument under Fleetwood Hotel, that domestic relations is an area purely of statewide concern. In the legislative scheme referenced by Lowe, we discern a legislative intent in Chapter 741 to preempt the area concerning the marital relationships. We agree with the trial court's conclusion that the DPA does not create a new marital relationship, so that it does not encroach upon an area reserved to the State.
For these reasons, we affirm the final judgment of the trial court, except that we hold section 16½-158(c) to be unconstitutional to the extent that it conflicts with section 765.401.
Pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v) we certify to the supreme court the following question to be of great public importance:
DOES THE BROWARD COUNTY DOMESTIC PARTNERSHIP ACT CONTRAVENE ARTICLE VIII, SECTION 1(g) OF THE FLORIDA CONSTITUTION BECAUSE:
(1) THE ACT IMPROPERLY INTRUDES INTO A MATTER PURELY OF STATEWIDE CONCERN UNDER CITY OF MIAMI BEACH V. FLEETWOOD HOTEL, INC., 261 So.2d 801, 804 (Fla.1972);
or
(2) THE ACT IS INCONSISTENT WITH SECTIONS 741.212, 112.08(2)(a), 741.211, OR 798.02, FLORIDA STATUTES (1999)?
AFFIRMED IN PART; REVERSED IN PART.
DELL and POLEN, JJ., concur.

APPENDIX
Sec. 16½-151. Findings; construction.
(a) The Broward County Board of County Commissioners finds that there are many individuals who establish and maintain a significant personal, emotional, and economic relationship with another individual. Individuals forming such domestic partnerships often live in a committed relationship. Domestic partners are often denied public and private sector benefits because there is no established system for such relationships to be registered or recognized. In addition, because of the status of their relationship, domestic partners in many cases are not extended certain employment benefits that are otherwise made available to other employees.
(b) The Broward County Board of County Commissioners finds that employment benefits form an essential portion of the compensation provided to employees. In fact, the U.S. Census Bureau has estimated *1212 that over 30 percent of all compensation paid to employees is provided in the form of benefits. The importance of benefits to employees has been underscored by a 1994 Employee Benefit Research which survey found that 67 percent of employees would prefer to return a portion of their cash salary rather than any portion of their benefit program.
(c) The Broward County Board of County Commissioners acknowledges that in 1994 over 3 million Americans identified themselves as living in a domestic partnership. As a result, employers have begun to provide domestic partner benefits in greater numbers.
(d) The Broward County Board of County Commissioners finds that the provision of domestic partner benefits promotes employee recruitment, employee retention, and employee loyalty. Furthermore, the provision of such benefits promotes fairness and serves to address the discriminatory effect of practices which deny such benefits solely upon the basis of an employee's familial or marital status.
(e) The provisions of this act shall be liberally construed to promote the public safety, health, and general welfare of the residents of Broward County and to further the general policies and purposes stated in this act. However, this act shall not be construed to supersede any federal, state, or county laws or regulations, nor shall this act be interpreted in a manner as to bring it into conflict with federal, state, or county laws. The rules developed to implement the provisions of this act shall be liberally construed to accomplish the policies and purposes stated in this act.
Sec. 16½-152. Definitions. For purposes of this Act:
(a) "Business" means any corporation, partnership, sole proprietorship, firm, joint stock company, joint venture, or other private legal entity, except governmental entities, not-for-profit corporations, or charitable organizations.
(b) "Contractor" means any business which has, or is awarded, one or more contracts by Broward County.
(c) "County employee" means active or retired employees of Broward County, Florida, who are eligible for benefits pursuant to federal, state, or county laws, county administrative rules, or collective bargaining agreements.
(d) "Declaration of Domestic Partnership" means a sworn form under penalty of perjury, which certifies that said individuals meet the requirements of a domestic partnership relationship as described in section 16½-153.
(e) "Domestic Partners" means only two adults who are parties to a valid domestic partnership relationship and who meet the requisites for a valid domestic partnership relationship as established pursuant to section 16½-153.
(f) "Dependent," as used with regard to domestic partnership benefits, pursuant to Section 16½-156, means the domestic partner of a County employee.
Any determination relating to whether [a] person identified above qualifies as a dependent of the County employee shall be based solely on whether such person is supported, in whole or in part, by the County employee's earnings and relies on such support. Dependency does not depend on whether the dependent could support himself or herself without the County employee's earnings or whether the dependent could so reduce his or her expenses such that he or she could live independently of the County employee's earnings. Dependency does not depend on whether the dependent is employed or earns a substantial part of his or her own support.
(g) "Dependent of domestic partner" or "dependent of employee," as used with regard to domestic partnership benefits, pursuant to Section 16½-156, means a person who is eligible for coverage under the County's insurance plans.
(h) "Jointly Responsible" means each domestic partner mutually agrees to provide *1213 for the other partner's basic food and shelter while the domestic partnership relationship is in effect, except that partners need not contribute equally or jointly to said basic food and shelter.
Sec. 16½-153. Registration of a domestic partnership relationship.
(a) A valid domestic partnership relationship may be registered by two persons, who are domiciled in Broward County or are, otherwise, subject to the provisions of this ordinance, by filing a declaration of domestic partnership with the Broward County Records Division, which declaration shall comply with all requirements for establishing such domestic partnership. Upon payment of any required fees, the county clerk shall file the declaration of domestic partnership and issue a certificate reflecting the registration of the domestic partnership relationship in Broward County.
(b) A declaration of domestic partnership shall contain the name and address of each domestic partner, the signature of each partner, and each partner shall swear or affirm under penalty of perjury that:
(1) Each person is at least 18 years old and competent to contract;
(2) Neither person is married nor a partner to another domestic partnership relationship;
(3) They are not related by blood;
(4) Consent of either person to the domestic partnership relationship has not been obtained by force, duress, or fraud; and
(5) Each person agrees to be jointly responsible for each other's basic food and shelter.
(c) Any partner to a domestic partnership may file an amendment to the domestic partnership certificate issued by County Records Division to reflect a change in his or her legal name.
(d) No person who has entered into a domestic partnership relationship may enter into a new domestic partnership until 30 days after the termination of a previous domestic partnership relationship.
Sec. 16½-154. Termination of registered domestic partnership relationship.
(a) Either partner to a registered domestic partnership relationship may terminate such relationship by filing a notarized declaration of termination of domestic partnership relationship with the County Records Division. Upon the payment of the required fee, the county clerk shall file the declaration and issue a certificate of termination of domestic partnership relationship to each partner of the former relationship. The termination shall become effective 30 days from the date the certificate of termination is issued.
(b) If any partner to a domestic partnership relationship enters into a legal marriage, the domestic partnership relationship shall terminate automatically, and all rights, benefits, and entitlements thereunder shall cease as of the effective date of the marriage. The marrying domestic partner shall file a declaration terminating the domestic partnership relationship within 10 days after entering into a legal marriage.
(c) The death of either domestic partner shall automatically terminate the domestic partnership relationship.
Sec. 16½-155. Maintenance of records; filing fees.
(a) The Broward County Records Division shall, by administrative rule, prescribe the form of all declarations, amendments, and certificates required to be filed under this act. The County Records Division shall maintain a record of all declarations, amendments, and certificates filed pursuant to this act. The records shall be maintained so that all declarations, amendments, and certificates shall be filed with the registered domestic partnership to which they apply.
(b) Filing Fees. The County Administrator is authorized to establish fees for the filing of any declarations, amendments, and the issuance of any certificates required *1214 by this act, subject to the approval of the County Commission. The fees shall be included within the Broward County Administrative Code. Any fees established under this section shall be sufficient to cover costs of administering the provisions of this article.
Sec. 16½-156. County employees; extension of benefits.
(a) Any County employee who is a party to a registered domestic partnership relationship, pursuant to section 16½-153 of this act, shall be entitled to elect insurance coverage for his or her domestic partner or a dependent of such domestic partner on the same basis in which any County employee may elect insurance coverage for his or her spouse or dependents. A County employee's right to elect insurance coverage for his or her domestic partner, or the partner's dependent, shall extend to all forms of insurance provided by the County to the spouses and dependents of County employees, unless such coverage is prohibited by state or federal law. All elections of coverage shall be made in accordance with the requirements of applicable county ordinances, administrative rules, and county policies. However, in no event shall an employee make an election for coverage of a domestic partner more than two times in a plan year.
(b) Any County employee who is a party to a registered domestic partnership relationship, pursuant to section 16½-153 of this act, shall be entitled to use all forms of leave provided by the County including, but not limited to, sick leave, annual leave, family illness leave and bereavement leave to care for his or her domestic partner or the dependent of the domestic partner as applicable. The use of leave authorized in this section shall be consistent with the applicable requirements in county ordinances, administrative rules, and county policies.
(c) Unless prohibited by state or federal law, all other benefits available to the spouses and dependents of County employees shall be made available on the same basis to the domestic partner, or dependent of such domestic partner, of a County employee who is a party to a registered domestic partnership relationship pursuant to section 16½-153 of this act.
(d) The County Administrator is authorized to take all actions necessary to implement the provisions of this section by no later than January 1, 2000.
Sec. 16½-157. Preference for county contractors providing for nondiscrimination of benefits for domestic partners.
Except where federal or state law mandates to the contrary, in the purchase of personal property, general services, or professional services, as such terms are defined in County Ordinance 1-74, by means of competitive bid or proposal procedure, a preference in an amount of one (1) percent of the bid or proposal price may be given to a Contractor providing for nondiscrimination of benefits for Domestic Partners.
(a) Public works.
Except where federal or state law mandates to the contrary, in the purchase of, or contract for, the construction or renovation of public works or improvements, a preference in an amount of one (1) percent of the bid or proposal price may be given to a Contractor providing for nondiscrimination of benefits for Domestic Partners.
(b) Point totals.
Except where federal or state law mandates to the contrary, in the purchase of personal property, general services, or professional services by means of letter of interest and competitive selection and negotiation in which objective factors used to evaluate the letters of interest or other submittals received from vendors are assigned point totals, a preference in the amount of ten (10) percent may be given to a Contractor providing for nondiscrimination for Domestic Partners.
(c) Other preferences.
The preferences established herein in no way prohibit the right of the Board of *1215 County Commissioners to compare quality of materials proposed for purchase and compare qualifications, character, responsibility and fitness of all persons, firms, or corporations submitting bids or proposals. Further, the preferences established herein in no way prohibit the right of the Broward County Board of County Commissioners from giving any other preference permitted by law instead of the preference granted herein.
Sec. 16½-158. Visitation to licensed facilities.
(a) If a health care facility or any licensed residential facility restricts the visitors of a patient or resident, the facility shall permit the patient or resident to name those individuals whom he or she wishes to visit, including any domestic partner, or any children or family member of such domestic partner, unless:
(1) No visitors are allowed; or
(2) The facility, in its sole discretion, decides that the presence of a particular individual named by the patient or resident would endanger the health or safety of a patient or a resident, or would endanger the primary operations of the facility.
(b) If a patient or resident has not made the designation provided for in paragraph (1), the facility shall permit the patient or resident's domestic partner, the children of the domestic partner, and any other family member of the patient or resident's domestic partner, to visit, unless one of the exceptions described in paragraph [(a)(1)] or [(b)(2)] applies.
(c) A domestic partner of a patient or resident shall have the same rights as would a spouse or other family member with respect to visitation, and the making of health care decisions for the patient or resident, to the extent that a patient or resident has not executed a valid power of attorney for health care or a health care surrogate designation.
Sec. 16½-159. Health care surrogate designation.
Any person who is a party to a registered domestic partnership relationship, pursuant to section 16½-153 of this act, shall have the same right as any other individual to be designated as health care surrogate of his or her domestic partner pursuant to Part II of Chapter 765, Florida Statutes, and a person so designated shall have the right to make health care decisions on behalf of his or her domestic partner; to provide, withhold, or withdraw consent on behalf of his or her domestic partner; to apply for public benefits to defray the cost of health care; and to authorize the admission to, or transfer from, a health care facility. No person designated as a health care surrogate shall be denied or otherwise be defeated in serving as a health care surrogate based solely upon his or her status as the domestic partner of the partner on whose behalf health care decisions are to be made.
Sec. 16½-160. Preneed guardian designation.
Any person who is a party to a registered domestic partnership relationship, pursuant to section 16½-153 of this act, shall have the same right as any other individual to be designated as a preneed guardian pursuant to section 744.3045, Florida Statutes, and to serve in such capacity in the event of his or her declarant domestic partner's incapacity. A domestic partner shall not be denied or otherwise be defeated in serving as the plenary guardian of his or her domestic partner or the partner's property, under the provisions of Chapter 744, Florida Statutes, to the extent that the incapacitated partner has not executed a valid preneed guardian designation, based solely upon his or her status as the domestic partner of the incapacitated partner.
Sec. 16½-161. Visitation rights at county correctional and juvenile detention facilities.
Any person who is a party to a registered domestic partnership relationship, pursuant to section 16½-153 of this act, shall be entitled to visit his or her domestic *1216 partner, or other family member of the domestic partner, who is an inmate at a county correctional facility or a juvenile detention facility, upon the same terms and conditions under which visitation is afforded to spouses, children, or parents of inmates. Visitation rights provided by this section shall extend to any children of the domestic partners, and the domestic partners of an inmate's parents or children.
Sec. 16½-162. Notification of family members.
In any situation providing for mandatory or permissible notification of family members, including notification of family members in an emergency, or when permission is granted to inmates to contact family members, "notification of family" shall include domestic partners.

* * *
NOTES
[1] Pertinent parts of the Domestic Partnership Act, as they appear in the record in this case, are included in the appendix to this opinion.
[2] "`Dependent of domestic partner' ... as used with regard to domestic partnership benefits, pursuant to Section 16½-156, means a person who is eligible for coverage under the County's insurance plans." BROWARD CO., FLA.CODE § 16½-152(g) (1999).
[3] Because the county has not cross-appealed the trial court's determination of standing, we do not address the issue of the trial court's denial of that portion of Lowe's motion to allow amendment of the complaint, which sought to bolster Lowe's standing to bring the lawsuit.
[4] We agree with Lowe that City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla.1972), establishes a constitutional principle that is separate from the doctrine of preemption.
[5] The only statute Lowe cites which defines "dependent" is section 627.6699(3)(g), Florida Statutes (1999). Lowe also cites to an outdated version of section 121.011 and section 627.5575, Florida Statutes (1999), which do not define dependents, but which identify the classes of persons for whom a group life insurance policy may be extended to insure.